## 77310. WRIGHT v. THE STATE.
### (375 SE2d 895)

BEASLEY, Judge.

Wright, Beneby, Boston, Hale, and Scott were indicted in one count for trafficking in cocaine. The indictment also charged Wright, and his girlfriend Rand, with one count of possession with intent to distribute. Wright was convicted, by the court, only of possession of cocaine, OCGA § 16-13-30 (a). He appeals on the grounds that his motion to suppress was improperly denied and that there was insufficient evidence upon which to convict him.

Viewing the evidence favorable to the verdict, it shows that on June 3, 1987, GBI undercover agents Slay and Simmons had negotiated with Scott and Hale to purchase a kilo of cocaine. The agents started the negotiations at Hale's apartment. Hale had to leave for his job with MARTA, but he directed the agents to a fast food restaurant near the intersection of Memorial and Glenwood Drives, where they met Scott. Scott told the agents to follow him to a nearby K-Mart shopping center. There, a black Blazer driven by Boston pulled up next to them. He left after telling them to wait 15-20 minutes.

Agent Mays was parked away from the other agents, but he was in radio contact. He followed the Blazer when it left the lot and proceeded to 1767 Austin Drive, defendant Wright's residence, and parked approximately a quarter mile away. Although he could not see the house from where he was, he could observe the driveway entrance. The Blazer pulled into the driveway, where it remained for 15-20 minutes. While there, a Blue Mustang convertible with the top down, driven by Wright, pulled into the driveway. Within a few minutes of the Mustang's arrival, the Blazer left and returned to the K-Mart, followed by Mays.

Agent Slay entered the Blazer where he tested the kilo of cocaine handed to him by Beneby. Boston was still driving. The purchase price was $37,000. Boston and Beneby were arrested at approximately

4:50 p.m.

At 5:35 p.m., while the officers and these two men were still at the shopping center, the blue Mustang drove into the lot. Defendant Wright was driving and pulled into a parking space. Officer Mays told the other officers that the driver was the same man who had driven the car by him on Austin Drive. The officers approached the car and questioned defendant after advising him of the *Miranda* rights. The officers told him that Boston and Beneby had just been arrested for drugs. Defendant stated that he and Beneby were classmates in Florida and that he lived at the Austin Drive address. He also admitted that he knew Boston and that Boston had been to the house about fifteen to thirty minutes earlier. He denied any knowledge of the drug activity.

At that point, agent Slay asked if the officers could search the residence. Although defendant would not sign a written consent to search form, the officers testified that he gave a verbal consent to search. The officers and defendant went to the home and it was searched. Rice, another male, was asleep on the sofa in the living room.

A safe was found in defendant's bedroom. Defendant said it was his. The officers were unable to open it and asked defendant to open it, which he did by combination. Inside were 27.5 ounces of cocaine and $4,000 in cash. Another $6,000 in cash and a woman's purse were found elsewhere in the room. While the search was being conducted, defendant's girlfriend, Rand, arrived.

Defendant testified that he did not consent to the search, that the safe was not locked, that Beneby and Rice also had access to the safe, and that he did not know the contraband and money were in it. He denied being the driver of the Mustang when it was first seen on Austin Drive and contended that he was taking a shower at the time. When he got out of the shower, there was no lotion so he dressed and was on his way to K-Mart for some when he was accosted by the police.

The trial court concluded that Wright was under arrest from the time he was interviewed at the K-Mart and that the officers had probable cause to arrest him without a warrant. It further concluded that defendant consented to the search and that the consent was voluntary.

1. Since the trial court concluded that defendant was under arrest at the parking lot, as contended by defendant, we premise our consideration on this conclusion.

Defendant raised both his Fourth Amendment rights under the federal Constitution and his "constitutional rights . . . as secured to him by the Constitution of Georgia." This was apparently a reference to Ga. Const. 1983, Art. I, Sec. I, Par. XIII, although that is nowhere

specified in the record below.

In considering whether the probable cause standard has been met, the inquiry in a no-warrant situation is currently the same under either provision. *Battle v. State,* 254 Ga. 666, 670 (3) (333 SE2d 599) (1985); *Gibbons v. State,* 253 Ga. 283 (319 SE2d 861) (1984); *Durden v. State,* 250 Ga. 325, 326 (297 SE2d 237) (1982).

"Under this standard an arrest is constitutionally valid if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense. [Cit.]" *Durden,* supra at 326; *Napier v. State,* 184 Ga. App. 770, 771 (1) (362 SE2d 501) (1987).

When defendant was arrested, the agents knew that a major drug transaction was in the process of being finalized; that the vehicle which they believed was to deliver the cocaine had driven into the appointed location, i.e., the K-Mart lot; that they had been told to wait fifteen minutes; that the vehicle then proceeded to the Austin Drive location and waited for a period of time; that within minutes of the arrival of defendant in the Mustang, the Blazer left and arrived at the K-Mart lot with a kilo of cocaine, and that, after the transaction was completed, defendant came to the transaction's location. At the time the agents approached him in his car, they had at least reasonable suspicion to stop defendant and make inquiry. *United States v. Sharpe,* 470 U. S. 675, 682 (105 SC 1568, 84 LE2d 605) (1985); *Terry v. Ohio,* 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

Upon inquiring of defendant, they determined that he knew both of the men just arrested and that the Austin Drive house was his residence. At this point, if not before, probable cause existed to believe that he was involved in committing the crime.

Defendant argues that he was not in the Mustang when it was first seen so that the only thing shown before the search of his home was his presence at the scene of the transaction, which he argues does not justify an arrest. The trial court chose to believe the agent with regard to this disputed fact; on appeal the trial court's ruling on disputed facts must be accepted unless clearly erroneous. *Muff v. State,* 254 Ga. 45, 48 (326 SE2d 454) (1985); *Lockwood v. State,* 184 Ga. App. 262, 263 (1) (361 SE2d 195) (1987). Thus the officers had more than mere presence upon which to base their assessment.

Having determined that there was probable cause, justifying the arrest without a warrant, OCGA § 17-4-20 and *Durden,* supra, the question of the validity of the consent to search given by defendant remains.

"Where the state seeks to justify a warrantless search on grounds of consent, it 'has the burden of proving that the consent was, in fact,

freely and voluntarily given.' [Cit.] A valid consent eliminates the need for either probable cause or a search warrant. [Cit.] The voluntariness of a consent to search is determined by looking to the 'totality of the circumstances.' . . . ." *Dean v. State*, 250 Ga. 77, 79 (2 a) (295 SE2d 306) (1982); *Borda v. State*, 187 Ga. App. 49, 50 (369 SE2d 327) (1988).

Defendant's argument is that the consent is involuntary as a matter of law due to the illegality of the arrest. Since we have determined that the arrest was legal, this argument need not be further considered.

The mere fact that an accused is under legal arrest when the consent is given does not establish the consent was made involuntarily or by coercion. *Dean*, supra at 80; *Howard v. State*, 185 Ga. App. 465, 466 (1) (364 SE2d 600) (1988).

The court's judgment on questions of credibility on a motion to suppress must be accepted unless clearly erroneous. *Muff v. State*, supra at 48; *Hill v. State*, 183 Ga. App. 654, 656 (2) (360 SE2d 4) (1987). Its findings that the consent was given and that it was given voluntarily cannot be said to be erroneous as a matter of law.

2. Defendant also contends that the evidence was insufficient to convict him of possession of the cocaine in the safe, as a matter of law.

Construing the evidence in favor of the verdict, the cocaine was found in a locked safe in defendant's bedroom. The only evidence supporting defendant's claim of "equal access" was his statement that Rice and Beneby had the combination to the safe also. Even if this had been accepted by the factfinder, that alone would not demand a finding that defendant was not guilty. The totality of the circumstances supports the factfinder's conclusion that defendant had at least joint possession of the cocaine found in his safe in his bedroom. *Pittman v. State*, 183 Ga. App. 12, 13 (1) (357 SE2d 855) (1987); *Lane v. State*, 177 Ga. App. 553, 554 (1) (340 SE2d 228) (1986).

The evidence was sufficient. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Birdsong, C. J., and Banke, P. J., concur.*

DECIDED DECEMBER 2, 1988.

*R. Keegan Federal, Jr.*, for appellant.
*Robert E. Wilson*, District Attorney, *Barbara B. Conroy, Robert E. Statham III*, Assistant District Attorneys, for appellee.