## A95A2358. THE STATE v. CANIDATE.
(469 SE2d 710)

ANDREWS, Judge.

The State appeals the trial court's granting of Driscoll Eldon Canidate's motion to suppress. The sole issue to be decided on appeal is whether the police officer had a reasonable suspicion of criminal conduct so as to justify the investigatory stop.

The evidence at the hearing showed that, on January 26, 1995, Officer Callihan was responding to a report of a stalled car when he noticed a brown Nissan Maxima in the driveway of a house which he knew had previously been raided. Callihan drove past and continued to respond to the call on the stalled car. When he arrived at the reported location, there was no stalled car, so Callihan turned around and drove back in the direction of the house. He saw a brown Maxima coming toward him and, thinking the driver may have been buying drugs at the house, pulled around behind the car to get the tag number and see if there were any equipment violations or anything else that would give him probable cause to pull the car over. The officer testified that the car appeared to accelerate as he was turning around to pull in behind it. Callihan testified that he was behind the car for a total of ten or fifteen seconds before the driver pulled over. Callihan said the car quickly pulled over into the parking lot of a real estate business, and the driver, later identified as Canidate, got out. Callihan followed the car into the parking lot and asked Canidate why he was trying to avoid him. Canidate explained he was trying to get to the real estate agent's to see about buying a house. After questioning Canidate, Callihan went back to his car to run the information and found that Canidate's driver's license was suspended. Callihan then asked Canidate for his driver's license. Canidate started looking for the license and Callihan noticed an open container of alcohol in the car. Officer Callihan asked Canidate if he could look in his car and Canidate refused. The officer then told Canidate that he already had criminal charges against him for driving with a suspended license and explained to him that the police knew about the reputation of the house where he had been parked. At that point, Canidate said, "Well, go ahead. You can look." When Officer Callihan bent down to look in

the car, he saw the end of a gun sticking out from the area between the seat and the console. As Callihan reached in to pull the gun out, Canidate turned and ran. Canidate was eventually caught and charged with carrying a concealed weapon, DUI, obstruction of an officer, possession of a firearm by a convicted felon, and driving with a suspended license.

Canidate's version of the incident differs from Officer Callihan's. Canidate testified the police car turned around in the middle of the street and followed him with just a few feet in between the cars. Canidate stated that he slowed down and pulled over to see if the officer wanted to get by, but instead of passing him, the officer blinked his lights and then turned on all his flashing lights, at which point Canidate turned into the parking lot of the real estate office.

The trial court found that Officer Callihan effected a stop by pulling around behind Canidate, following him closely and pulling in after him when Canidate turned into the parking lot. The court found that the stop was based on a hunch and not a particularized and articulable suspicion that Canidate was involved in some criminal activity.

"On motion to suppress evidence, the trial judge sits as the trior of the facts, hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it." (Citations and punctuation omitted.) *Dimick v. State*, 178 Ga. App. 60, 61-62 (341 SE2d 914) (1986). In reviewing the record and pertinent case law, we find that the trial court correctly determined that Officer Callihan did not have a particularized and objective basis for suspecting Canidate of criminal activity. *United States v. Cortez*, 449 U. S. 411, 418 (101 SC 690, 66 LE2d 621) (1981).

Officer Callihan freely admitted that he did not have any basis for stopping Canidate when he pulled in behind him. He also stated that he followed Canidate into the parking lot with the intention of questioning him. But, the State contends that when Canidate sped up and pulled into the parking lot and got out of his car, then the totality of the circumstances created an articulable suspicion that something was going on and Callihan was justified in detaining him.

The standard for a *Terry* stop has been set forth repeatedly. "Although an officer may conduct a brief investigative stop of a vehicle, [cit.], such a stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct, *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 1883, 20 LE2d 889, 909) (1968). [Cit.]" (Punctuation omitted.) *Tarwid v. State*, 184 Ga. App. 853 (1), 854 (363 SE2d 63) (1987). "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. [Cits.]" (Punctuation omitted.)

*Tarwid*, supra at 854.

Case law applying these standards supports our conclusion that the investigatory stop was not justified. In *State v. Jones*, 214 Ga. App. 593 (448 SE2d 496) (1994), the defendant made a wide U-turn in the middle of the street, apparently to avoid driving by two police cars parked by the side of the road. In addition, the driver did not use his turn signal before making the turn. In light of this "suspicious" behavior, the officer stopped the driver for failing to signal and cited him for DUI. We affirmed the trial court's granting of a motion to suppress, finding the stop was not justified since the officers did not observe the driver commit any crime and there were no facts to indicate he was about to violate the law. Id. at 594. A "hunch" that someone has turned around to escape police detection of some wrongdoing is insufficient as the basis for an investigative stop. *Jones*, supra at 594 (citing *Terry*, supra).

Here, Canidate's act of pulling over into the parking lot did not furnish any additional reason sufficient to create an articulable suspicion justifying a *Terry* stop. *Jones*, supra. See also *Postell v. State*, 264 Ga. 249 (443 SE2d 628) (1994) (officers who were given information that a drug courier was making a delivery at a certain address had no reason to stop defendant near that address, even though defendant had been stopped previously several times on informant's tip that he was a drug courier); *Brown v. State*, 188 Ga. App. 184 (372 SE2d 514) (1988) (no reason to stop defendant although car fit drug courier "profile" and after officer began following the car made a quick lane change and crossed into the emergency lane). Accordingly, for the reasons discussed above, we find the officer did not have an articulable suspicion as a basis for the investigatory stop, and, therefore, the trial court did not err in granting Canidate's motion to suppress.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED FEBRUARY 20, 1996.

*J. Tom Morgan, District Attorney, Jeanne M. Canavan, Assistant District Attorney*, for appellant.
*Corinne M. Mull-Milsteen*, for appellee.