S96A1422. BERRY v. THE STATE.
(480 SE2d 32)

HINES, Justice.

William Herman Berry engaged in a "shoot-out" with Osceola Kelly on an Atlanta public housing complex playground. It resulted in the fatal shooting of 13-year-old Aisha Heard and the wounding of 13-year-old Jamina Bolston and co-defendant Kelly. After a joint jury trial with Kelly, Berry was found guilty of the malice murder, felony murder, and aggravated assault of Heard, the aggravated assaults of Bolston and Kelly, and possession of a firearm by a first offender probationer. Following the denial of his motion for new trial, Berry appeals his convictions. He challenges jury strikes and the court's instruction to the jury, and urges prejudice from numerous instances of alleged ineffective assistance of trial counsel. We affirm.[1]

---

[1] The crimes occurred on September 10, 1993. On February 25, 1994, Berry was indicted for malice murder, felony murder, three counts of aggravated assault, and possession of a firearm by a first offender probationer in connection with the crimes. He was tried jointly with co-defendant Osceola Kelly, commencing on August 16, 1994, and was found guilty of all charges on August 19, 1994. On September 13, 1994, Berry was sentenced to life imprisonment for the malice murder, five concurrent years of incarceration for the first offender firearm possession, and 15 concurrent years of incarceration each for the aggravated assaults of Bolston and Kelly. The conviction for felony murder stood vacated by operation of law, OCGA § 16-1-7, and the aggravated assault of Heard merged into the malice murder conviction. Berry's motion for new trial, filed by new appellate counsel on October 11, 1994, and as amended on August 2, 1995, December 12, 1995, and December 15, 1995, was overruled on December 15, 1995. A notice of appeal was filed on January 10, 1996, and

1. The evidence, viewed in favor of the verdicts, established that Berry and Kelly had a history of conflict with each other. Berry claimed that in a prior incident Kelly had stolen money and drugs from him, and the two men had "fighting words" three days before the incident on trial. Both men were armed when they confronted each other on the evening of September 10, 1993, and they exchanged gunfire. Berry shot the children, Heard and Bolston, after Kelly grabbed them and used them as shields during the gunfight.

The evidence was sufficient for a rational trier of fact to find Berry guilty beyond a reasonable doubt of the crimes for which he was charged and convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).[2]

2. Berry complains that the trial court erred by allowing the State extra peremptory strikes when selecting the alternate juror in contravention of OCGA § 15-12-165. He claims harm in that the alternate served on the jury and allegedly was "predisposed to convict."

OCGA § 15-12-165, in conjunction with OCGA § 17-8-4, addresses the number of peremptory challenges to be afforded the State and multiple defendants in the selection of the sitting jurors in the trial of an indicted crime.[3] See *Henry v. State*, 256 Ga. 313 (348 SE2d 640) (1986). The selection of alternate jurors is governed by the provisions of OCGA § 15-12-169. Whether or not this statutory provision was contravened is unclear because the record fails to disclose with certainty how many strikes were available in total to the defendants or to the State in selection of the alternate.[4] Regardless, Berry fails to demonstrate harm. "The exercise of peremptory strikes has long been recognized as a procedure created to assist litigants in obtaining a fair and impartial jury and not an independent substantive right. The substantive right involved is the right to an impartial jury and peremptory strikes are merely one possible procedure that can be used to obtain such a jury. [Cits.]" *Barner v. State*, 263 Ga. 365, 367 (4) (434 SE2d 484) (1993). The record wholly fails to support

---

the case was docketed in this Court on May 28, 1996. The appeal was argued on October 15, 1996.

[2] Osceola Kelly's convictions in connection with the crimes were affirmed. *Kelly v. State*, 267 Ga. 252 (477 SE2d 110) (1996).

[3] The record reveals that, in compliance with OCGA § 15-12-165, the court permitted the State exactly one-half the number of strikes for the defendants, that is, the State and Berry and Kelly were each given six peremptory challenges. The regular jury of twelve was completed after selection of the twenty-fifth venireman out of a panel of thirty-three, with the State using three of its strikes, Kelly using four, and Berry all six.

[4] The sixth person was selected as the alternate, after the State's strike of the first three, Kelly's strike of the fourth, and Berry's strike of the fifth. It is impossible to discern if the court granted either defendant additional strikes and they merely elected to take the person named as alternate.

Berry's claim of denial of an impartial forum, that is, that the alternate had a predisposition for conviction.

3. In five separate enumerations of error, Berry challenges portions of the court's jury charge concerning the defense of accident.[5] He claims that the cited statements erroneously equated accident with criminal intent, impermissibly shifted the burden of proof, constituted an impermissible comment on the evidence, were confusing, and effectively precluded consideration of the defense of accident. The challenge fails.

In general, "either accident or self defense will be involved in a case, but not both." *Turner v. State*, 262 Ga. 359, 360 (2) (b) (418 SE2d 52) (1992). Berry testified that he fired his weapon to defend himself from Kelly and to scare him off. Such an intentional firing does not invoke the legal defense of accident. See *Scott v. State*, 261 Ga. 611 (409 SE2d 511) (1991); *Duke v. State*, 256 Ga. 671 (352 SE2d 561) (1987). Compare *Turner*, supra. Nor is it raised by the circumstance that Berry may not have intended to shoot either young girl because the doctrine of transferred intent applies. *McMichen v. State*, 265 Ga. 598, 610 (20) (458 SE2d 833) (1995). Inasmuch as the evidence presented on Berry's behalf failed to raise the defense of accident, the court was not required to instruct on it and its doing so at the defendant's request was gratuitous.

Reviewing the substance of the court's instruction on accident does not give merit to Berry's challenge. This Court must assess it in the context of the entire charge and not from isolated excerpts. See *Smith v. State*, 253 Ga. 476, 477 (2) (322 SE2d 58) (1984). While it appears that the trial court made slips of the tongue regarding accident in a portion of its instruction on intent, the charge taken as a whole did not equate the defense with criminal intent. Nor was the instruction on accident confusing and burden shifting. The trial court charged the defense in the language of the statute and instructed the jury on the presumption of innocence and the State's burden of proof beyond a reasonable doubt. *Williams v. State*, 257 Ga. 186, 187 (2) (356 SE2d 872) (1987); *Lofton v. State*, 237 Ga. 275 (227 SE2d 327) (1976). Finally, the court's informing the jury that the legal defense of accident did not encompass the deliberate aiming and firing of a weapon was not an impermissible comment on the evidence but rather correct statements regarding the boundaries of the defense. See *Scott v. State* and *Duke* v. *State*, supra.

4. Berry alleges numerous instances of trial counsel's ineffective assistance and asserts that the cumulative effect "rendered the trial meaningless and resulted in a complete and total breakdown of the

---

[5] OCGA § 16-2-2.

adversarial process."

To be successful with a claim of ineffectiveness of trial counsel, a defendant must demonstrate that his attorney's performance was deficient and that the deficiency prejudiced the defense. To accomplish this, the defendant must overcome the strong presumption that his attorney's performance fell within a wide range of reasonable professional conduct and that the attorney's decisions were made in the exercise of reasonable professional judgment. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case. *Roland v. State*, 266 Ga. 545, 546 (2) (468 SE2d 378) (1996), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984) and *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985). Berry fails to succeed with his claims of ineffectiveness and a breakdown of the trial proceeding.

(a) Berry contends that counsel was ineffective for failing to object to the State being afforded extra peremptory strikes and for failing to ensure that Berry was present at an unrecorded bench conference in which he asserts counsel acquiesced to such extra strikes. But as previously discussed, Berry has failed to demonstrate any harm from the procedure employed in selecting the alternate. See Division 2, supra.

(b) Over the State's hearsay objection, Berry was allowed to testify on direct that prior to the shooting, he "started hearing the rumors about [a person] said [Kelly] was going to kill me. . . ." Prior to cross-examination of Berry, the court instructed the jury that it had allowed Berry to testify about hearing of the threats because it was part of Berry's defense. Berry maintains that his counsel was ineffective for failing to object to the instruction because it was tantamount to a judicial comment on the sufficiency of the evidence in violation of OCGA § 17-8-57.

The court's statements did not violate the statutory prohibition. The court was not expressing an opinion about the credibility of Berry's defense, but rather was attempting to instruct the jury that any hearsay was not probative evidence of the alleged threats by Kelly.

(c) Berry claims that his counsel was ineffective for failing to object to the court's jury charge on impeachment of a witness,[6] which

---

[6] The court charged:

[T]hat to impeach a witness is to prove to the satisfaction of a jury that such witness is not worthy of belief. One of the methods known by law for impeaching a witness is by proof of contradictory statements previously made by such witness as to matters material to the testimony and to the case; another is by disproving facts testified to by such witness. Now, if any effort has been made to impeach a witness, it is a question for the jury to determine whether or not such effort has been successful. If a witness should be successfully impeached; that is to say, if it should be

charge he contends was error under *James v. State*, 180 Ga. App. 7 (348 SE2d 502) (1986). The claim fails. The problem highlighted in *James* is language in the charge, which in isolation, appears to usurp the jury's right to determine for itself the credibility of a witness, even if that witness has been successfully impeached. However, as was discussed in *James*, such an instruction on impeachment must be read in conjunction with the entire jury instruction and provides no cause for reversal if the court's instruction in its entirety makes it plain that the jury is the sole judge of witness credibility. Such was the case here. Both before and after the language at issue, the court clearly apprised the jury of the fact that it was the exclusive judge of the credibility of the witnesses.

(d) Berry contends that his counsel was ineffective for failing to object to the court's instruction that should the jury believe from the evidence as a whole that the defendant is guilty beyond a reasonable doubt, "it would be their duty to convict." While it is clearly the better practice to inform the jury that it "would be authorized to find the defendant guilty," the charge as given may fail to provide any basis for reversal. *Sutton v. State*, 262 Ga. 181 (2) (415 SE2d 627) (1992). The single objectionable phrase in the context of the whole charge did not misdirect the jury concerning its lawful obligations. *Lemay v. State*, 264 Ga. 263, 266 (4) (443 SE2d 274) (1994).

(e) Berry claims that his counsel was ineffective for not objecting to the court's joint references to him and co-defendant Kelly throughout its charge thereby "allowing the jury to convict [him] upon a finding that [Kelly] was guilty beyond a reasonable doubt." The claim is unavailing. The trial court clearly instructed the jury about its duty to consider each charge in the indictment against each defendant separately and that the guilt of one defendant was not a finding of guilt as to the other.[7] See *George v. State*, 260 Ga. 809, 810 (5) (a) (400 SE2d 911) (1991).

---

shown to the satisfaction of a jury that such witness is not worthy of belief, then, in that event, it would be the duty of the jury to disregard the testimony of such witness unless the same is corroborated by other credible and unimpeached testimony, either direct or circumstantial. The jury being the exclusive judges of the credibility of the witnesses, it is for them to determine the credit that shall be given to any witness who testified.

[7] The court charged in pertinent part:
I want to caution you that you need to keep in mind that you have to make a decision with respect to each count or to consider each count separately. In other words, because you decided one way with one count, that's the way all the other counts go. You are required to look at each count and make a determination with respect to each count, if you can, as to the defendants' guilt or innocence, and you are to do that with each defendant. In other words, because you find one guilty does not mean that you automatically find the other guilty. You have to look at the evidence as it applies to each defendant on each count and make your determination and make sure that your verdict shows that you have considered each one. . . .

(f) Berry next contends that his counsel was ineffective for failing to object to what he characterizes as the trial court's "express comment on the evidence in violation of OCGA § 17-8-57."[8] However, objection to the statements at issue would not have aided Berry. Berry admitted on the stand his prior conviction and that he had purchased and possessed a firearm even though he knew he would be in violation of his first offender probation. A court's expression about what is uncontested and undisputed is not cause for reversal. *Dixon v. State*, 196 Ga. App. 15, 18 (7) (395 SE2d 577) (1990). More significantly, the court made it plain that it had not commented about the determination of Berry's guilt by its instruction to the jury that anything it said or did during the trial was not intended to suggest a verdict in the case, and that the court's sole interest in the matter was that the case be fairly presented according to law and that the jury conscientiously and impartially consider it. See *Lumpkin v. State*, 249 Ga. 834, 837 (3) (295 SE2d 86) (1982).

(g) Berry fails in his claim that counsel was ineffective for not lodging objection to the court's charging OCGA § 16-2-20 in its entirety. When this entire Code section is charged even though a portion may be inapplicable under the facts in evidence, it is usually not cause for a new trial. *Lee v. State*, 265 Ga. 112, 113 (3) (a) (454 SE2d 761) (1995). Furthermore, a review of the evidence belies Berry's assertion that only subsection (b) (1) of the statute was applicable.

(h) Berry next cites ineffectiveness of counsel for not objecting to the court's charge regarding reckless disregard for human life.[9] He maintains that in order for the charge to be correct, it had to inform the jury that "only a heightened reckless disregard" would be sufficient to imply the intent to kill. Contrary to Berry's assertions, it was for the jury to determine as to "whether the act was such a reckless disregard for human life as to be equivalent of a specific intent to kill." *Bishop v. State*, 257 Ga. 136, 138 (1) (356 SE2d 503) (1987).

(i) Berry's claim that he was rendered ineffective assistance because counsel failed to request a charge on mutual combat fails. The trial court instructed the jury on combat by agreement.[10] More-

---

[8] In its instruction on the offense of possession of a firearm by a first offender probationer, the court commented on the fact that Berry had testified to commission of that offense.

[9] The court stated,
> that intent to kill may be established by proving to the satisfaction of a jury beyond a reasonable doubt a reckless disregard for human life. In other words, you can look at all the facts and circumstances to determine a person acted with reckless disregard for human life to determine whether or not that amounts to intent.

[10] The court charged, in pertinent part, that a person was not justified in using deadly force when
> engaged in combat by agreement unless the person withdraws from the encounter and effectively communicates his intent to withdraw to the other person and the

over, counsel's election to pursue theories of self-defense and accident was a matter of tactics and strategy, and whether "wise or unwise" did not amount to ineffective assistance of counsel. *Luallen v. State,* 266 Ga. 174, 177 (3) (b) (465 SE2d 672) (1996).

(j) Berry also claims that his counsel was ineffective for failing to object to what he maintains was improper closing argument by the prosecutor.[11] The claim lacks merit. A prosecutor may appeal to the jury to convict for the safety of the community or to argue to the jury the necessity for enforcement of the law. *Philmore v. State,* 263 Ga. 67, 68 (3) (428 SE2d 329) (1993).

5. Berry fails in his final contention that, under *Kyles v. Whitley,* ___ U. S. ___ (115 SC 1555, 131 LE2d 490) (1995),[12] he was denied a fair trial because of the cumulative effect of the court's allegedly erroneous charge. Pretermitting whether or not *Kyles v. Whitley* is applicable to a situation of asserted errors in jury instructions, Berry's claims of error in the court's charge are without merit. See Division 4, supra.

*Judgments affirmed. All the Justices concur.*

DECIDED FEBRUARY 3, 1997.

*Jeffery L. Ertel,* for appellant.

*Lewis R. Slaton, District Attorney, Henry M. Newkirk, Kirby Clements, Jr., Assistant District Attorneys, Michael J. Bowers, Attorney General, Christopher S. Brasher, Assistant Attorney General,* for appellee.

---

other person still continues or threatens to continue the use of force.

[11] The statements at issue are:

You now become the law enforcement officers of this community. You determine what laws are to be enforced in this community. It is solely in your hands. . . . It has been said that the only thing necessary for the triumph of evil over good is for good people to do nothing. Ladies and gentlemen, you are the good people of Fulton County. I will leave it with you. . . .

[12] The United States Supreme Court considered the cumulative effect of suppressed evidence required to be disclosed under *Brady v. Maryland,* 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).