A97A1930. THE STATE v. HALL.

(493 SE2d 718)

MCMURRAY, Presiding Judge.

Defendant-appellee Emerson Hall and defendant Frederick J. C. Saunders were jointly charged in an indictment with a single count of trafficking in cocaine, in that they allegedly "did knowingly possess 28 grams or more of a mixture containing at least ten percent Cocaine. . . ." Each defendant moved to suppress contraband discovered in a vehicle driven by defendant Saunders and in which defendant-appellee Hall was a passenger. The motions were originally denied by the first superior court judge on July 20, 1995. Motions for reconsideration of the denial of the motions to suppress were subsequently denied by the second superior court judge nunc pro tunc January 29, 1996. Defendant-appellee Emerson Hall's renewed motion to suppress was ultimately granted by the third superior court judge on January 28, 1997, who concluded "the consent of Defendant Saunder's [sic] was not valid in as much as [sic] the evidence showed that an officer at the scene represented to the Defendant that a warrant to search will be obtained if consent is refused *or withdrawn*[, thereby] rendering the consent invalid." (Emphasis supplied.) Pursuant to OCGA § 5-7-1 (a) (4), the State brings this direct appeal, enumerating as error the grant of defendant-appellee Hall's motion to suppress. *Held*:

1. "[I]n a consent search, the burden is upon the [S]tate to 'demonstrate that the consent was voluntarily given, and not the

result of duress or coercion, express or implied. Voluntariness is a question of fact [for the trial court] to be determined from all the circumstances.' [Cits.]" *Code v. State*, 234 Ga. 90, 93 (III) (214 SE2d 873). "While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous ([cits.]), where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review. [Cits.]" *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474). In the case sub judice, the evidence is in dispute as to whether defendant Saunders questioned the police as to what would happen if he refused or withdrew his consent to search the car. *Consequently, the factual findings of the trial court are reviewed under the deferential "clearly erroneous" standard.*

2. Viewed in the light most favorable to the trial court's determination (*State v. Browning*, 209 Ga. App. 197 (1), 198 (433 SE2d 119)), the evidence adduced at the suppression hearing authorized the following facts:

On March 9, 1994, Trooper Frank Matthew Gaskin of the Georgia State Patrol stopped a vehicle traveling north on I-95, after radar indicated the car was going "90 miles an hour in a 65 mile per hour zone." "The driver was Frederick Saunders." In the front passenger seat was defendant-appellee Emerson Hall. Saunders produced a Bahamian "driver's license along with a photocopy of [his] passport because the driver's license doesn't have a picture on it." A rental agreement indicated the car was rented in Miami, Florida to defendant Saunders. Trooper Gaskin issued Frederick Saunders a citation for speeding and summoned Deputy David Blige of the Bryan County Sheriff's Department to come to the scene and accept a cash bond from Saunders. The radio operator's report indicates that Deputy Blige was requested at "2052," i.e., 8:52 p.m. There is also a notation that at "2101," i.e., 9:01 p.m., Trooper Gaskin inquired about the availability of a "drug dog."

There was no indication the vehicle had been stolen, there was no problem with the rental paperwork, there was no visible sign of any green leafy material in the passenger compartment; no seeds, no baggies, no mirror, no white powder, no razor blades, no straws, no guns, no large amounts of cash, no beer, no liquor, no bottles; nor was there any indication the driver or the passenger "were under intoxication." Nevertheless, Trooper Gaskin's suspicions were aroused when defendant-appellee Emerson Hall told him "they were going to North Carolina to see some friends," whereas the driver had "stated he was going to Atlanta to see some relatives." "Based on the conflicting stories between [the driver] and his front passenger it [led] [Trooper Gaskin] to believe that there was something that wasn't

quite right. And based on that [Trooper Gaskin] asked for a consent to search his vehicle." State's Exhibit 2 is a copy of a consent form to search the vehicle, "including luggage and contents thereof." This was executed by Frederick Saunders, ostensibly signed at 9:11 p.m. But both the speeding citation and the citation for possession of a controlled substance purport to be issued at 9:00 p.m.

Defendant Frederick Saunders testified that "[w]hile he [Trooper Gaskin] was writing the ticket [for speeding] he called in for the drug dog. And he started to write up a ticket. He asked [defendant Saunders] if [he] would be able to afford the cash bond." While they were waiting for Deputy Blige to arrive, Trooper Gaskin asked defendant Saunders "if [he, defendant Saunders] would mind him searching the car. [Defendant Saunders] asked him what would happen if [he did not] allow [Trooper Gaskin] to search the car. He told [defendant] that he would impound the car and [defendant] would be arrested until they get a search warrant from the judge." Once Deputy Blige arrived, defendant Saunders "asked Officer Blige if [he, defendant Saunders] don't sign the warrant [(consent form?)] would they be allowed to arrest [him] and impound the car until they get a warrant and he told [defendant] yes. And that's when [defendant Saunders] signed the form." Trooper Gaskin affirmed that had defendant Saunders not given him consent to search, since Trooper Gaskin had already written him a ticket, "[defendant Saunders] would have been free to go or he was free to go at the time Deputy Blige gave him his driver's license and his receipt for his money." Deputy Blige confirmed he told defendant Saunders "they [had] the right to stop the search . . . at any time[,] [b]ut then [Trooper Gaskin would] go get a warrant." Defendant Saunders confirmed that both his clothes and defendant-appellee Hall's clothes were in the bag searched. Defendant Saunders felt "intimidated or threatened if [he] didn't sign the consent [form,] [t]o the point of being arrested. . . ."

Trooper Gaskin "located a black bag in the trunk of the vehicle. It was filled with clothes. [Trooper Gaskin] removed the clothes and noticed that the bottom of the bag was uneven. The bottom of the bag was lumpy and [Trooper Gaskin] removed the clothes from the bag and noticed that there was freshly dried glue along the seams of the bottom of the bag. And [he] pulled the bottom of the bag up and found the white powder substance that was wrapped in plastic in the bottom of the bag's false compartment."

(a) In the case sub judice, the State does not contend that Trooper Gaskin had probable cause to search the vehicle. Rather, the State argues first that the suppression motion ought not have been granted by the third judge, after the first judge "chose to believe the testimony of the police, and [originally] denied the motion," and the second judge denied reconsideration.

This argument is without merit. "Discretion in regulating and controlling the business of the court is necessarily confided to the [presiding] judge. OCGA § 15-1-3." (Citations and punctuation omitted.) *Scott v. State*, 216 Ga. App. 692, 693 (3), 694 (455 SE2d 609). The denial of a pre-trial suppression motion, an interlocutory evidentiary ruling, is subject to review by the presiding judge ex mero motu. *Chastain v. State*, 158 Ga. App. 654, 655 (281 SE2d 627). "The trial court may, within its sound discretion, consider anew a suppression motion previously denied. [Cits.]" *State v. Marcus*, 206 Ga. App. 385 (1) (425 SE2d 351).

(b) Next, the State contends the grant of the suppression motion is erroneous because defendant-appellee Hall had no standing to object to the search as a mere passenger. But it is uncontradicted that the black bag contained some of defendant-appellee Hall's clothing. Consequently, it cannot be held, as a matter of law applied to undisputed fact, that defendant-appellee Hall had no protected privacy interest in the sealed bag in the trunk of the vehicle in which he was a passenger. In our view, defendant-appellee Hall was entitled to challenge the validity of this search. *State v. Diaz*, 191 Ga. App. 830, 831 (1), 832 (383 SE2d 195). Compare *Ballard v. State*, 216 Ga. App. 315, 316 (454 SE2d 200).

(c) "[W]here deceit is used to obtain a consent, e.g., when an officer represents to an accused that he has authority to search, when actually he does not, a resultant consent by the accused to the search is invalid. In these circumstances, the consent is merely a submission to an apparent legitimate display of legal authority to which all are required to submit. [Cit.]" *Code v. State*, 234 Ga. 90, 93 (III), 95, supra. Accord *Darby v. State*, 216 Ga. App. 781, 782 (1), 783 (2) (455 SE2d 850).

In our view, the disputed evidence in the case sub judice authorized the trial court's conclusion that defendant Saunders' initial consent was the reluctant result of coercion. Such coercion is implied when an officer, without a good faith belief that he has the probable cause necessary for the issuance of a warrant by a neutral and disinterested magistrate, states that a warrant will be obtained if the suspect does not consent to a warrantless search. Consequently, the fact that defendant Saunders did not revoke that invalid initial consent is without significance.

*Judgment affirmed. Beasley and Smith, JJ., concur.*

DECIDED NOVEMBER 5, 1997.

*Dupont K. Cheney, District Attorney, Carole E. Wall, Assistant*

*District Attorney*, for appellant.
    *Lloyd D. Murray*, for appellee.