## A99A0695. MORRIS v. THE STATE.
(520 SE2d 485)

McMURRAY, Presiding Judge.

Defendant William R. Morris was tried before a jury and found guilty of a single count of violating the Georgia Controlled Substances Act by possessing cocaine. Viewed in the light most favorable to the verdict, the evidence adduced at trial revealed that, after a traffic stop and during a weapons pat-down of defendant's person, defendant consented to a search of the contents of his shirt pocket. There, police found a match box containing three small plastic bags of cocaine. Defendant's motion for new trial was denied, and this appeal followed. *Held*:

1. Defendant moved to suppress the cocaine found on his person, arguing that the police had no reasonable basis for stopping his vehicle, and that the search of the match box exceeded the justifiable scope of a weapons pat-down as authorized by *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889). In two related enumerations, defendant assigns error to the denial of that motion.

Where the evidence is uncontradicted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to the undisputed facts is subject to de novo appellate review. *State v. Hall*, 229 Ga. App. 194-195 (1) (493 SE2d 718). At the suppression hearing, the only witnesses were Deputies Brad White and Chris Webster of the Lamar County Sheriff's Office. Their uncontradicted testimony authorized the following facts:

On Friday, July 18, 1997, between 2:30 and 3:00 a.m., Deputies White and Webster were dispatched to The Hot Spot, a convenience store in Barnesville, Georgia, on Highway 341 North. The Hot Spot closes on Thursday evenings-Friday mornings "between the hours of two [a.m.] and 4 [a.m.]." The deputies were responding to a complaint from one of the cashiers that a man driving a black pickup truck was "outside beating on the [front] door trying to get in. She [the cashier] was scared, so she wanted a deputy to go check him out and see what the problem was." It took the deputies four or five minutes to arrive from the jail. It was "totally dark." All the "outside lights were off. It [the store] was clearly closed." The deputies saw "a black truck leaving from the front of the store." Specifically, as they approached, they saw the black truck "backing away from the door. It backed up and started past the gas pumps. By the time [the deputies] got in the parking lot and got behind it, it was towards the lower end of the parking lot," but had not yet exited the lot. There were no other vehicles in sight. The deputies initiated a traffic stop, halting the truck while it was still in the convenience store parking lot. Other than the cashier's complaint, the deputies had no independent basis for stopping this vehicle.

Deputy White spoke with the driver, defendant, while Deputy Webster spoke with the cashier. Defendant explained "he was trying to get bread." While asking defendant for his license and proof of insurance, Deputy White "detected an odor of alcohol on [defendant's] breath," and detained defendant for "just a roadside evaluation [with] the Alcosensor." When defendant exited the truck, Deputy White patted defendant down for weapons. Deputy Webster "patted [defendant's] shirt pocket because [the officer] noticed it had a bulge in it." Defendant said it was a pack of matches. When Deputy Webster inquired whether defendant minded if the deputy examined the matches, defendant said "no, go ahead." Deputy Webster "handed it to Deputy White and continued to pat [defendant] down. Shortly after, Deputy White advised [Deputy Webster] to place [defendant] under arrest." Inside the match box, Deputy Webster "found three clear, plastic bags containing a white powdery substance" that subsequently tested positive for cocaine.

(a) Even though defendant appears somewhat unsteady on his feet, the videotape of this traffic stop corroborates the consensual nature of the search yielding the cocaine sought to be suppressed.

> " 'Once a voluntary consent is legally obtained, it continues until it either is revoked or withdrawn. (Cits.)' *Mallarino v. State*, 190 Ga. App. 398, 403 (2) (379 SE2d 210) (1989). ' "A valid consent eliminates the need for either probable cause or a search warrant. (Cit.)" ' *Wright v. State*, 189 Ga. App. 441, 444 (1) (375 SE2d 895) (1988)." *Boggs v. State*, 194 Ga. App. 264 (390 SE2d 423). If [Deputies White and Webster were] authorized to stop defendant's vehicle and approach, the consent is not invalid.

*McDaniel v. State*, 227 Ga. App. 364, 365-366 (2) (489 SE2d 112) (whole court). Thus, defendant's argument that the search of his match box exceeded the bounds of a *Terry*-type frisk for weapons simply is not germane to the lawfulness of that consensual search. *Hunter v. State*, 190 Ga. App. 52-53 (1) (378 SE2d 338).

(b) In our view, the articulated ground for stopping defendant's vehicle in the parking lot was neither arbitrary nor harassing but was specific and reasonable under the totality of the circumstances.

A police officer is authorized to make a brief, but nevertheless forcible, investigatory detention of an individual where the intrusion can be justified by specific, articulable facts giving rise to a reasonable suspicion that the person stopped has been, is, or is about to be engaged in criminal activity. *United States v. Place*, 462 U. S. 696, 702 (II) (103 SC 2637, 77 LE2d 110). What is demanded of the police officer, as the agent of the State, is a founded suspicion, some neces-

sary basis from which the court can determine that the detention was not arbitrary or harassing. *Brisbane v. State*, 233 Ga. 339, 341 (211 SE2d 294).

In the case sub judice, the frightened cashier reported conduct arguably amounting to disorderly conduct in violation of OCGA § 16-11-39 (a). It is not necessary that reasonable cause for a stop and frisk be based only upon an officer's personal observation, rather than information supplied by another person. *Graves v. State*, 138 Ga. App. 327, 328 (226 SE2d 131), citing *Adams v. Williams*, 407 U. S. 143 (92 SC 1921, 32 LE2d 612). A concerned citizen or victim of a crime is accorded a presumption of credibility. *Sayers v. State*, 226 Ga. App. 645, 646-647 (487 SE2d 437); *Hinson v. State*, 229 Ga. App. 840, 842 (1) (c) (494 SE2d 693), rev'd on other grounds, *State v. Hinson*, 269 Ga. 862 (506 SE2d 870). When the police arrived at the closed convenience store minutes after the late-night complaint, they found only a black pickup as mentioned by the cashier, with no other vehicles in sight. Since

> defendant's [black pickup truck, the only vehicle in sight,] "roughly fit the description given [by the complaining citizen], this provided the basis for an articulable suspicion justifying the stop. *Terry v. Ohio*, 392 U. S. 1[, supra]; *Brisbane v. State*, 233 Ga. 339[, supra]." *McGhee v. State*, 253 Ga. 278, 279 (1) (319 SE2d 836).

*McDaniel v. State*, 227 Ga. App. at 366 (2), supra. Neither the Fourth Amendment nor Art. I, Sec. I, Par. XIII of the 1983 Georgia Constitution requires a policeman who lacks the precise level of information necessary for probable cause simply to shrug his shoulders and allow a crime to occur or a criminal suspect to escape. On the contrary, *Terry*, supra, recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be the most reasonable in light of the facts known to the officer at the time. *Graves v. State*, 138 Ga. App. at 328, supra. See also *State v. Carter*, 240 Ga. 518 (242 SE2d 28). That reasonable and brief, intermediary detention to establish identity and maintain the status quo is precisely what occurred in this instance. The trial court correctly denied defendant's motion to suppress made on the ground that the traffic stop was unauthorized.

2. Proof that defendant carried a match box on his person containing cocaine was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) to authorize the jury's verdict that defendant is guilty, beyond a reasonable doubt, of violat-

ing the Georgia Controlled Substances Act as alleged in the accusation. *Reeves v. State*, 194 Ga. App. 539, 540 (2) (391 SE2d 35).

3. The trial court granted the State's motion in limine to show the jury only that portion of the videotape of defendant's arrest that depicted the initial stop, search, and the discovery of cocaine. Defendant contends the court erroneously excluded the remainder of the tape, which depicted the search of a passenger and defendant's booking at the jail. He does not, however, adequately explain the relevancy of these events to the issues to be tried.

As a general rule, the admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse. *Hood v. State*, 216 Ga. App. 106, 108 (4) (453 SE2d 128). In particular, questions of relevancy are generally matters within the trial court's discretion, and it is not error to exclude evidence that is not related to an issue at trial. *Sleeth v. State*, 197 Ga. App. 349, 350 (3) (398 SE2d 298). In our view, the trial court did not abuse its broad discretion in excluding the remainder of the videotape as irrelevant.

4. Defendant next contends the trial court erred in limiting the scope of his cross-examination of Deputy White. Defense counsel questioned Deputy White during trial about the reasons for the investigative stop, attempting to impeach him with prior inconsistent statements about his reasons for stopping defendant's truck. The court advised counsel that many of the questions posed, pertaining to the legality of the initial stop, were settled in the motion to suppress hearing and therefore were not relevant to the issues to be tried. After giving defendant some latitude to demonstrate the relevance of this line of questioning, the trial court instructed him to move on to another topic. Counsel made no exception to this ruling and turned to the chain of custody of the cocaine seized from defendant.

To preserve his right to complain about an abridgement of his right of cross-examination, Morris must pose questions he desires to ask " ' "*and then interpose timely objection* to the ruling of the court denying the right to propound the questions. (Cits.)" . . . (Cits.)' [Cit.]" (Emphasis supplied.) *Bradford v. State*, 182 Ga. App. 337, 338 (5) (355 SE2d 735) (1987). See *Berry v. State*, 163 Ga. App. 705, 710 (4) (294 SE2d 562) (1982). In this case, defendant made no objection when the court initially advised him to show the relevance of his line of questioning, nor did he object when the court later told him to move on to another subject. Since defendant failed to interpose a proper objection and because the " 'scope of cross-examination rests largely within the sound discretion of the judge, we find no merit in this enumeration.' " *Bradford,* supra. Further, contrary to defendant's contention, we do not construe the court's ruling on this matter to be a comment by the court on Deputy White's credibility.

5. Defendant next contends the trial court erred in failing to give his requested charge on circumstantial evidence tracking the language of OCGA § 24-4-6. Instead, the charge as given includes the word "alone" following the words "circumstantial evidence."

We note the Suggested Pattern Jury Instructions, Vol. II: Crim. Cases, Part 2, (J) (2), p. 11, does not include the term "alone" in explaining the law of circumstantial evidence. Nevertheless, the trial court need not track the exact language of OCGA § 24-4-6 in order to satisfy the requirement that the jury be instructed on the principle of the sufficiency of circumstantial evidence to warrant a conviction. *Lowe v. State*, 267 Ga. 180, 181 (3) (476 SE2d 583), applying *Price v. State*, 180 Ga. App. 215 (2) (348 SE2d 740). Defendant certainly has not shown how any circumstantial evidence points to a reasonable hypothesis that he innocently carried cocaine in a match box he knew was in his shirt pocket. See *Sellers v. State*, 36 Ga. App. 653 (137 SE 912); *Reynolds v. State*, 23 Ga. App. 369 (98 SE 246). We find no error in this instance.

6. Finally, defendant contends the trial court erred in charging the jury that "proof of the general good character of the witness may be shown and the effect of the evidence is to be determined by the jury." He argues this was an unauthorized charge on the good character of the State's witnesses. The complained-of language was given as part of the court's charge on impeachment, which tracked the Suggested Pattern Jury Instructions, Vol. II: Crim. Cases, Part 2, (R), p. 27. An instruction on impeachment must be read in conjunction with the entire charge "and provides no cause for reversal if the court's instruction in its entirety makes it plain that the jury is the sole judge of witness credibility." *Berry v. State*, 267 Ga. 476, 480 (4) (c) (480 SE2d 32). In the case sub judice, the court's charge plainly stated that matters of witness credibility were exclusively within the jury's province. Because the charge, taken as a whole, was unlikely to mislead a jury of ordinary intelligence, we find no error. Id. See also *Green v. State*, 177 Ga. App. 577, 579 (4) (340 SE2d 234).

*Judgment affirmed. Johnson, C. J., Pope, P. J., Andrews, P. J., and Eldridge, J., concur. Smith, J., concurs in the judgment only. Ruffin, J., dissents.*

RUFFIN, Judge, dissenting.

I respectfully dissent from the majority opinion because I do not believe, as the majority finds, that the police officers had reasonable suspicion that Morris either was engaged or was about to be engaged in criminal conduct.

It is well settled that an investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal conduct. See *Barnes v. State*, 228 Ga. App.

44, 45 (491 SE2d 116) (1997); *State v. Goodman*, 220 Ga. App. 169, 172 (2) (469 SE2d 327) (1996); *Oboh v. State*, 217 Ga. App. 553, 555 (458 SE2d 177) (1995). Here, the only basis the officers provided for their decision to stop Morris is that they believed Morris was the individual who had been "beating on the door" of the convenience store, trying to gain entry after the store had closed. The convenience store closed from 2:00 a.m. until 4:00 a.m. When asked his reason for trying to get into the store, Morris explained that he wished to purchase bread. This explanation is entirely plausible, and I am confident that many law abiding citizens have attempted to convince a cashier to let them into a store after hours to make a purchase.

Of course, Morris could have broken the law in his attempt to gain entry into the store. However, there is no indication that he damaged store property while pounding on the door. Although the police officers testified that the store clerk said that she was afraid, the clerk did not testify either at the suppression hearing or at trial. Thus, there is no evidence that she asked Morris to leave. Also, there is no evidence suggesting that Morris threatened the clerk to convince her to open the door. Here, the only activity Morris engaged in was banging on the door of the store. Unquestionably, this does not constitute a crime.[1] We cannot assume criminality based on conduct which may reflect what someone thought was a crime — whether the officers or the store clerk — but which is, in fact, not a crime, without more. We cannot assume criminality based upon such innocuous conduct. See *Johnson v. State*, 231 Ga. App. 273 (498 SE2d 359) (1998) (physical precedent only) (no suggestion that defendant's conduct in knocking on doors to solicit a ride was illegal). Regardless of whether either the officers or the store clerk thought Morris' actions were criminal, absent *objective* evidence of criminal conduct, the officers lacked reasonable suspicion to detain Morris. *Rogers v. State*, 206 Ga. App. 654, 659 (3) (426 SE2d 209) (1992) (a reasonable suspicion of criminal conduct must be based on more than a subjective suspicion).

Moreover, there was no evidence suggesting that Morris was about to commit a crime as he was leaving the premises. The State presented no evidence that Morris committed any traffic violations while attempting to leave. To the contrary, one of the arresting officers acknowledged that there was nothing unusual about either Morris' truck or the manner in which the truck was being driven. Under these circumstances, where there is no evidence of criminal conduct of any kind, I do not believe the police were justified in stop-

---

[1] The majority asserts that Morris' "conduct arguably [amounted] to disorderly conduct in violation of OCGA § 16-11-39." I disagree. There is no evidence that Morris' actions were directed toward another person, that he used "opprobrious or abusive words," or that he used vulgar or profane language.

ping Morris. See *State v. Goodman,* supra (officer did not have reasonable suspicion of criminal conduct where defendant made a legal U-turn); *State v. Canidate,* 220 Ga. App. 276, 277 (469 SE2d 710) (1996) (officer not justified in investigating defendant after seeing him drive away from a house that had previously been raided only to pull quickly into a parking lot).

Accordingly, contrary to the majority conclusion, I do not believe the officers' stop of Morris was based on an articulable suspicion. Because the stop was improper, I believe that Morris' consent to search the match box the officers found in his pocket was tainted and, thus, the trial court should have suppressed evidence of the cocaine contained therein. See *Tarwid v. State,* 184 Ga. App. 853, 856 (1) (363 SE2d 63) (1987); *Bowers v. State,* 221 Ga. App. 886, 888 (473 SE2d 201) (1996) (physical precedent only).

DECIDED JULY 1, 1999 —
RECONSIDERATION DENIED JULY 14, 1999 ▮▮▮▮▮▮▮

*Virgil L. Brown & Associates, Virgil L. Brown, Russell B. Mabrey, Jr., Eric D. Hearn, Bentley C. Adams III, Larkin M. Lee,* for appellant.

*Tommy K. Floyd, District Attorney, Mark S. Daniel, Assistant District Attorney,* for appellee.

