(No. 20629.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* STUART GILLESPIE, Plaintiff in Error.

*Opinion filed April 23, 1931—Rehearing denied June 5, 1931.*

EDWIN JOHNSTON, (MERRILL H. JOHNSTON, and PAUL E. MATHIAS, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, A. W. SCHIM-MEL, State's Attorney, and J. J. NEIGER, for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was convicted in the circuit court of Pike county of the crime of burglary and sentenced to the penitentiary. He here seeks reversal of that judgment.

The indictment consists of two counts, the first charging that plaintiff in error forcibly broke and entered a certain tool-shed, the property belonging to the Pittsfield Country Club, a corporation; and the second count that he entered said tool-shed without force, the doors and windows being open. Both charge an intent to steal the personal property of the country club.

Plaintiff in error filed a motion to quash each count of the indictment on the ground that a "tool-shed" is not included within the term "other buildings," as defined by the Criminal Code; and as to the second count the further ground that it is bad for two additional reasons: (1) The tool-shed, being under construction, contained no doors and windows; and (2) the said count is double, in that it charged entering the tool-shed with the intent to commit a felony and also to steal personal property belonging to the country club. The motion to quash was overruled. A bill of particulars was on motion of plaintiff in error filed, which stated that the People intended to prove that the accused entered the tool-shed mentioned in the indictment with the intent then and there feloniously and burglariously to steal, take and carry away the following goods: Twenty gallons

of gasoline, of the personal goods and chattels of the said the Pittsfield Country Club, a corporation, then and there being in said tool-shed.

The evidence shows that the Pittsfield Country Club is located some two or three miles east of Pittsfield. On October 20, 1930, there was on the club grounds, at a point about a quarter of a mile off the highway, a tool-shed having ground dimensions of twenty feet by thirty feet. It was roofed. The east twelve feet of the north end, the east twelve feet of the south end and twenty feet on the north end of the east side were entirely open. These ends and side walls had not been built. Material was on the ground for enclosing the balance of the end and side walls and for the construction of doors to the shed. In the shed were a metal tank containing about ten gallons of gasoline, a mower, a tractor, and other articles of personal property owned by said club. Between six and seven o'clock in the evening of October 20, 1930, the caretaker of the club left the grounds, and about ten o'clock that evening officers of the club were notified that a building on the club grounds was on fire. It was this shed. It was completely burned. On the morning of October 21 officers and members of the club returned to the location of the shed and found that the gasoline tank, which was kept standing on end, had been tipped over from its position and the faucet in one end of the tank was resting on a five-gallon gasoline can containing a funnel. The lock on the faucet had been broken and near the tank were two other five-gallon gasoline cans. A starting crank of a 1929 Chevrolet automobile was found by the side of the gasoline tank. Neither the three five-gallon cans, the funnel nor the automobile crank were the property of the country club and none of them were in the shed when the caretaker left the premises the evening previous. The evidence also showed that on October 20, 1930, between the hours of seven and eight o'clock P. M., plaintiff in error was seen in the company of one William McGreevy and

one Pauline Coulter in the city of Pittsfield. The person last named was in possession of a 1929 model Chevrolet coupe. Shortly before eleven o'clock on that night plaintiff in error, in company with McGreevy and Pauline Coulter, drove up in front of the office of Dr. S. L. Smith, approaching from the direction of the country club. From there they drove to the Barber drug store, in Pittsfield, in said Chevrolet automobile, where Pauline Coulter purchased unguentine, gauze and bandage, which she took to the car and the three drove in the direction of plaintiff in error's home. On October 21 plaintiff in error was arrested, taken to the State's attorney's office and questioned by the sheriff and the State's attorney. At first he denied that he had been away from his home on the evening of October 20 or that he had been injured or burned. He was requested to lift the legs of his trousers, whereupon it was found that both legs were bandaged. Plaintiff in error then stated he had been in an automobile wreck near Quincy some four or five days prior, but said he did not know whose car it was, what his business was when the accident occurred or just where it occurred. He stated that the clothes he wore at the time of the accident were in Quincy but the clothes he wore the evening of October 20 were in his home at Pittsfield. He was then taken to the jail and the county physician called to give him treatment. The county physician testified that on removing the bandages he found the left leg severely burned from the knee to the top of a low shoe and his right leg burned to some extent on the shin. He stated that in his opinion the burns were less than twenty-four hours old. He testified that he attended plaintiff in error daily because of the severity of the burns, and that the limbs became so sore and swollen that plaintiff in error was unable to arise from his bed.

The sheriff testified that he obtained a pair of trousers, a sock and shoe at plaintiff in error's father's house which

plaintiff in error stated were his clothes, and that plaintiff in error told him the clothes were burned when the automobile in which he was riding caught fire near Quincy. This witness identified the gasoline can, funnel, the broken lock from the gasoline tank and the automobile crank as having been taken from the ruins of the tool-shed on October 21. The pair of trousers and sock, together with the shoes, were identified by the sheriff as those admitted by plaintiff in error to be his. None of the articles were offered in evidence. No evidence was offered on behalf of plaintiff in error.

Plaintiff in error urges here that both counts of the indictment are defective because neither contains an averment that a "tool-shed" is a building. He insists that such an averment is necessary, as a "tool-shed" is not included in the eighteen enumerated structures of the Burglary statute and does not come within the general classification of "other buildings." A building, within this act, has been defined as a fabric, structure or edifice, such as a house, church, shop or the like, designed for the habitation of men or animals or for the shelter of property; a structure. (9 Corpus Juris, 684; *Clarke* v. *State,* 69 Wis. 203, 33 N. W. 436.) In *Orrell* v. *People,* 94 Ill. 456, it was contended that an indictment which averred "the defendant broke and entered a stable," and contained no averment that it was a "building," was not sufficient to sustain a conviction. It was there said: "A 'stable,' as that word is commonly used and understood, is the equivalent of 'building,' and is therefore fairly included in the statute defining burglary in that class of structures denominated 'other buildings.'" We are of the opinion that the structure here described comes within the language "other buildings," as used in the statute defining burglary. *Bruen* v. *People,* 206 Ill. 417.

It is also urged that the second count is bad for duplicity, in that it charges both an intent to commit a felony and an intent to commit larceny, which may be a felony and may

be only a misdemeanor. The averment of the intent to commit a felony may be disregarded as surplusage, since it does not charge the intent contemplated in the statute. The count, however, also charges plaintiff in error with entering the tool-shed "with the intent then and there feloniously and burglariously to steal, take and carry away divers goods and chattels of the said Pittsfield Country Club, a corporation." The intent with which the defendant entered the building is the gist of the charge. (*Price* v. *People,* 109 Ill. 109.) The second count is not open to the objection urged.

It is also argued that the verdict is so general in terms that it is impossible to tell therefrom whether the jury found plaintiff in error guilty under the first count, which charges forcible entry, or the second count, entry without force, the doors and windows being open. There is no evidence of a forcible breaking and entering under count 1. If there was an entry—and the jury decided there was—it must have been under count 2. A general verdict is presumed to be based on any good count in the indictment to which the proof is applicable. *People* v. *Kingcannon,* 276 Ill. 251; *People* v. *Smith,* 239 id. 91; *Koser* v. *People,* 224 id. 201.

It is urged that there is no proof of the *corpus delicti.* The evidence showed that the gasoline tank had been moved from its position by tipping over onto a funnel inserted in the top of a five-gallon can. The lock on the faucet was broken. An automobile crank for a Chevrolet car and three five-gallon gasoline cans, none of which were present in said shed when the caretaker left the premises some three or four hours prior to the fire, were found near the gasoline barrel. It is reasonable to conclude that the fire which caused the destruction of the tool-shed was started while someone was attempting to unlawfully remove gasoline from the tank. The fact that plaintiff in error was that evening seen in the company of William McGreevy and Pauline Coulter in the latter's car prior to the fire, which occurred

about ten o'clock; the appearance of these parties shortly before eleven o'clock in front of the doctor's office; the purchases made by Pauline Coulter a few minutes later at the drug store; the arrest of plaintiff in error the next day with burns on his legs not over twenty-four hours old, and the admitted ownership by him of certain burned clothing produced on the trial, constituted facts sufficient to justify the jury in believing that plaintiff in error was the person who caused the destruction of the tool-shed. Circumstantial evidence may be resorted to for the purpose of proving the *corpus delicti* as well as for the purpose of connecting the accused with the crime. (3 Greenleaf on Evidence,— 16th ed.—p. 230; *People* v. *Spencer,* 264 Ill. 124; *People* v. *See,* 258 id. 152; *Carroll* v. *People,* 136 id. 456.) This contention cannot be sustained.

It is also urged that the failure of the People to offer in evidence the gasoline can, clothing and other articles identified by witnesses was prejudicial error, as plaintiff in error was thereby deprived of an opportunity to object to them. Part of these articles was found at the scene of the fire. They did not belong to the country club. They were not in the tool-shed early in the evening of the fire. The articles of clothing were obtained by the sheriff at the home of plaintiff in error's father, and in a statement to the sheriff plaintiff in error identified them as his property. The witnesses who identified these articles told the circumstances under which they were found. Plaintiff in error had the right to cross-examine these witnesses and to offer rebutting proof if he could and desired to do so. While it would have been proper to offer those articles in evidence, the failure of the State to do so could not have worked to the prejudice of the accused.

Objections are raised to certain instructions given for the State. We have examined these instructions. We would not be justified in lengthening this opinion by setting out

the instructions objected to and the objections raised. The objections raised are without merit.

Counsel next argue that the court erred in refusing to give plaintiff in error's 9th, 10th, 11th, 12th, 13th and 14th instructions. These instructions, with the exception of the 14th, are based on plaintiff in error's theory that the tool-shed herein referred to is not a building and there could therefore be no forcible breaking or entering. It was not error to refuse to give these instructions. Plaintiff in error's refused instruction No. 14 is covered by his given instructions and it was not error to refuse to give it.

The record contains no error requiring reversal of the judgment, and it is affirmed.          *Judgment affirmed.*