### 65195. DIXON v. THE STATE.

BIRDSONG, Judge.

Floyd Dixon was tried jointly with three co-accuseds and convicted of burglary, theft by taking, and as an habitual felony offender. He was sentenced to serve 20 years. He brings this appeal enumerating four asserted errors.

The jury was warranted in distilling from the evidence the following facts. On October 22 a grocery store known as the "Green Spot" was open for business in Dalton. Around 10:00 a. m. the owner (Green) went to the bank and obtained a large sum of cash for the operation of the store (and others in a chain of such stores). He placed a sum of currency in a locked bank deposit bag and placed this bag, together with approximately $4,800 in currency lying alongside the locked bag and an undisclosed amount of rolled coins, in a cabinet inside a small enclosure (room) located in the front of the grocery store. The enclosure was surrounded by four walls (but without ceiling) and sat on a platform so that the enclosure was elevated above the general floor level of the store. A door to this "front office" automatically latched when the door was closed. One could reach over the top of the door and unlatch the door from the outside to gain entrance. Only designated persons were allowed entrance into the office. The $4,800 in currency in the cabinet (in the office) was banded by the bank in bundles of $50 ($1 bills) and $500 ($5, $10, and

$20). The bands were stamped with the name of the bank, the date the bundles were prepared, and initialed by the teller preparing the bundle.

At about noon Green left to eat his lunch. A clerk in the store at about the same time was called to the checkout area to help bag groceries. As he approached the front of the store he heard a noise which he subsequently realized was the drawer on the cabinet in the office being opened. He also noticed some wires leading upward from the office to the ceiling of the store were moving. He assumed that someone was in the office. The clerk observed a black male apparently talking on a phone located on the side wall of the office. A second black male approached him and asked him where cornmeal was located. A third black male then came up and discussed a magazine with him. At this point the clerk believed his attention was being diverted from the office, and the clerk mentioned to the bagger at the adjoining checkout station that he believed a robbery (i. e., burglary) was occurring. When the clerk first came to the front and heard the squeaking sound, he noticed the door to the office was closed. In between the time the first man asked for cornmeal and the second man discussed the *Ebony* magazine, the clerk observed the door to the office to be slightly cracked open. After the magazine discussion, he saw the door was once again closed. At that time the three black men began to leave the store by the front door. The clerk also saw for the first time a fourth black male on the way past the register to leave the store (ostensibly the person in the office). All four men left at about the same time.

Another store employee (a butcher preparing to leave for lunch) saw four black males run around the corner at the front of the store building, across the parking lot and disappear. He then saw a green car drive rapidly away from the store. Another witness looking out the window of his office building (adjoining the grocery store) saw a green Buick being driven in an erratic manner, and two black males literally jump into the back seat as the green Buick was driving away. This witness obtained the license plate number of the car and went to the grocery store to inquire if a robbery had taken place. It was ascertained that the cabinet drawer had no loose currency and the manager and the police were informed that a burglary apparently had taken place. The manager (owner Green) verified that approximately $4,800 in banded currency had been taken, but neither the larger sum in the locked bank bag nor any of the rolled coins had been taken. The police immediately began a lookout for a green Buick with the identified tag number and containing four black males. In a few minutes, officers spotted such a car with four black males. When an effort was made to stop the car, the driver (Dixon) sped away at

speeds at times in excess of 100 m.p.h. When the car eventually was stopped, Dixon jumped from the car and fled on foot but was quickly apprehended. In a paper bag near the driver's door was found $4,800 in banded bundles of $1, $5, $10 and $20 bills. Each band had the bank stamp, date and initials of the tellers of the bank similar to or the same as Mr. Green had secured that morning. *Held:*

1. In his first enumeration of error Dixon complains the trial court erred in denying a motion for continuance to allow his recently retained attorney to prepare for the defense of the trial, and he urges this lack of preparation is manifested by counsel's unenthusiastic defense.

Dixon apparently had secured an earlier delay because of his failure to obtain counsel. At the trial his retained counsel had been secured about a week before trial. When the case was called, the transcript reflects that counsel announced ready. The transcript also reflects that Dixon's counsel conducted extensive cross-examination and otherwise provided reasonable representation. *Willis v. State,* 249 Ga. 261 (290 SE2d 87). We have examined the transcript and found the trial tactics followed by counsel to be reasonable and appropriate. *Scott v. State,* 157 Ga. App. 608 (278 SE2d 49). We can find no error in the denial by the trial court of a continuance for further preparation. *Foster v. State,* 213 Ga. 601, 603 (100 SE2d 426); *Pope v. State,* 140 Ga. App. 643, 644 (231 SE2d 549).

2. In his second enumeration of error, Dixon argues that there were fatal variances in the allegata and the probata. He argues the "front office" was not an area or space subject to being burglarized. We reject this contention out of hand. Burglary is committed when one, without authority, enters any building or room or part thereof. Code Ann. § 26-1601; *Riley v. State,* 130 Ga. App. 181, 182 (202 SE2d 533). The evidence in this case shows that the room, though small, was a room for the exclusive use of limited authorized persons and was wholly enclosed and secured as a room. This portion of the enumeration is without merit.

Appellant also argues that the indictment charged him with taking currency and coins when in fact only currency was taken. This currency was identifiable in contradistinction to ordinary fungible goods by the unique bands, markings and specific quantity. There was a sufficient description of the crime and object of theft to permit Dixon to prepare his defense and to protect him against a second prosecution for the same offense. Theft of money was alleged, and whether in the form of currency or coins, not otherwise specified, the indictment and proof of theft of currency was sufficient. See *Jones v. State,* 147 Ga. App. 779, 781 (3) (250 SE2d 500). There is no merit in this complaint.

3. Dixon also urges that there was insufficient evidence to connect him to the crime. There was no direct evidence that Dixon was one of the burglars and each of the co-accused offered evidence of an alibi.

Our view of the evidence after a close examination of the evidence convinces us that any reasonable trier of fact would have been satisfied beyond reasonable doubt that crimes of burglary and theft by taking had been committed and that Dixon was one of the perpetrators. *Baldwin v. State,* 153 Ga. App. 35, 37 (264 SE2d 528). There is no merit in this enumeration.

4. In his last enumeration of error, Dixon contends that because one of the chief witnesses for the state violated the rule of sequestration, the trial court erred in refusing to strike the witness' testimony.

Appellant seeks an unavailable remedy. A witness who violates the rule is not thereby rendered incompetent, although he may be subject to attachment for contempt or his testimony may be subject to impeachment. *May v. State,* 90 Ga. 793, 800 (17 SE 108). The trial court has broad discretion to handle such matters and his discretion will not be disturbed unless it is manifestly abused. *Baker v. State,* 143 Ga. App. 302, 305 (6) (238 SE2d 241). When this matter was brought to the attention of the trial court, the jury was fully charged as to the violation and the possible impact upon the testimony of the witness. We find no abuse of the trial court's discretion in this case.

*Judgment affirmed. McMurray, P. J., and Banke, J., concur.*

DECIDED JANUARY 14, 1983.

*Donald C. Beskin,* for appellant.
*Stephen A. Williams, District Attorney, Marcus R. Morris, Assistant District Attorney,* for appellee.