## A97A0011. SMITH v. THE STATE.
### (485 SE2d 572)

JOHNSON, Judge.

Joseph Smith, Jr. contends that the evidence was insufficient to support his burglary conviction because the unfinished house from which he removed a fireplace was not completely enclosed or secured and had not yet been used as a dwelling. This argument is without merit.

Under OCGA § 16-7-1 (a), "[a] person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another *or any building*, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another or enters or remains within *any other building*, railroad car, aircraft, or any room or any part thereof." (Emphasis supplied.)

The indictment in this case alleged Smith "without authority and with intent to commit a theft therein, enter[ed] the *building* of Greg Mills d/b/a M & M Custom Homes." (Emphasis supplied.) Before trial, the parties stipulated that Smith entered the house

without authority and removed a fireplace. Both parties agreed that the only issue for consideration by the trial court was whether the house, which was under construction, was sufficiently complete so as to come within the meaning of OCGA § 16-7-1 (a).

At trial, evidence was introduced showing that on the night the fireplace was taken, the house had a roof, walls, windows and some vinyl siding. With the exception of the garage door and the door leading from the garage to the interior of the house, all exterior doors were installed. When Mills left for the evening, the windows and doors were all closed. Smith and a co-defendant entered the house through the garage.

We are not persuaded by Smith's argument that the evidence was insufficient to authorize a burglary conviction because the house had not yet been used as a dwelling. Whether the house was a dwelling is irrelevant inasmuch as the indictment did not charge Smith with entering a dwelling house, but with entering a building. The issue for our determination, therefore, is whether the house under construction constitutes a "building" within the meaning of OCGA § 16-7-1 (a).

The word "building" is not defined in the statute. And, after a diligent search, we have found no Georgia cases specifically addressing the issue of whether an unfinished house can properly be considered a "building" as that term is used in OCGA § 16-7-1 (a). Nonetheless, for the reasons set out below, we agree with the trial court's ruling that the house entered, though unfinished, is a "building" as contemplated by the burglary statute.

Where our appellate courts have considered the meaning of the word "building," we have defined or interpreted it broadly. For instance, in *Williams v. State*, 105 Ga. 814, 815 (32 SE 129) (1898), the Supreme Court of Georgia considered whether the theft of pigeons from a stationary, wire-enclosed chicken house fell within the purview of a larceny statute which prohibited theft from "any dwelling-house, store, shop, warehouse, or any other building." The court defined "building" as "an edifice for any use; that which is built, as a dwelling-house, barn, etc.," and held that the chicken house came within the meaning of the statute. Id. at 815. In *Floyd v. State*, 207 Ga. App. 275, 280 (1) (427 SE2d 605) (1993) (discussed more fully below), this Court recited the same definition and held that a garden center enclosed by a fence and unmortared blocks contiguous to a store was a *part* of the store's main building.

The Supreme Court of Georgia offered a more elaborate definition of "building," albeit in a civil proceeding involving the interpretation of a restrictive covenant. It defined "building" as "a structure in the nature of a house built where it is to stand; as commonly understood, a house for business, residence, or public use, or for shel-

ter of animals or storage of goods, and very generally, but not always, the idea of a habitation for the permanent use of man, or an erection connected with his permanent use." *Turner v. Standard Oil Co. &c.*, 220 Ga. 498, 502 (2) (140 SE2d 208) (1965). The unfinished house in the instant case clearly satisfies the definitions set out in each of these cases.

A survey of appellate court decisions from other states which have burglary statutes similar to Georgia's reveals that, in every case we located involving a house or similar structure under construction, the unfinished structure was held to come within the meaning of the term "building." In *Clark v. State*, 33 NW 436 (Wis. 1887), the Wisconsin Supreme Court held that a house under construction, which had walls, sides, and a roof, though no windows or doors, was a building under that state's burglary statute, and that "building" does not necessarily mean a structure so far completed as to be in all respects fit for the purpose for which it was intended. Id. at 437. It need only be so far complete that it may be used for shelter or occupation of man or animal or storage of tools or other personal property. Id. at 438. Similarly, in *People v. Angel*, 577 NYS2d 116 (1991), the appellate division of the New York Supreme Court held that a house under construction which needed windows, a skylight and interior work before it was completed was a "building" for purposes of the burglary statute. And, in *People v. Gillespie*, 176 NE 316 (Ill. 1931), the Supreme Court held that a tool shed under construction comes within the "other buildings" language used in Illinois' burglary statute, despite the fact that no doors or windows had been installed. Id. at 318 (1).

As with the other states' burglary statutes, Georgia's statute is very broad and does not limit its application to buildings of any particular type or in any particular condition. To hold that a structure is not a building simply because it is not perfect for the purpose for which it is eventually to be used, would be to give the statute a stricter construction than we are disposed to place upon it. See generally *Clark*, supra at 438. Indeed, it appears that the legislature, by placing the word "any" before "building," intended that the statute include buildings of whatever kind. Furthermore, we note that this court has affirmed burglary convictions where the house burglarized was under construction, although the specific issue of whether an unfinished house is a "building" within the meaning of the burglary statute was not raised. See, e.g., *Davis v. State*, 134 Ga. App. 750 (216 SE2d 348) (1975); *Thurston v. State*, 186 Ga. App. 881 (368 SE2d 822) (1988).

We find the decisions in cases such as *Clark* and *Angel* persuasive, and hold that a "building" under the burglary statute includes a house under construction which is so far completed as to be capable

of providing shelter to people, animals, or property, such as the house in this case. We note that this holding is consistent with the definitions of "building" set out in *Turner, Williams,* and *Floyd,* supra.

Smith argues that the structure is not a building because it is not "wholly enclosed and secured." This language is taken from *Floyd,* supra, and *Dixon v. State,* 165 Ga. App. 133, 135 (2) (299 SE2d 608) (1983), cases which have very limited applicability here. In *Dixon,* we held that an enclosed area inside a grocery store was a "room" for the purposes of the burglary statute because it was "wholly enclosed and secured as a room." Id. In *Floyd,* we held that a garden center constructed of chain link fencing and unmortared blocks was "any room or any part" of the adjacent retail building within the meaning of the burglary statute. *Floyd,* supra at 278-281 (1). Neither case involves houses or other structures under construction. Nor does the court in either case decide whether the structure at issue is a building. In any event, we note that the areas at issue in *Floyd* and *Dixon* were held to be "wholly secured and enclosed" despite the fact that in *Floyd* there was an opening above the fence and the blocks were movable; and in *Dixon* the room had no ceiling and could be entered by reaching over the door and unlatching it. Thus, the "wholly enclosed and secured" language does not require that the structure contains no possible means of entry. The evidence was sufficient to authorize Smith's conviction of burglary. See *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Pope, P. J., and Blackburn, J., concur.*

DECIDED APRIL 3, 1997.

 Before Judge Ozburn.
*William D. Kelly,* for appellant.
*Alan A. Cook, District Attorney,* for appellee.