## A00A1481. REDFERN v. THE STATE.
(540 SE2d 701)

ANDREWS, Presiding Judge.

William Earl Redfern was found guilty by a jury of burglary based on the charge that he entered a building without authority with the intent to commit a felony therein. On appeal he claims the evidence was insufficient to support the guilty verdict. Because we find the State failed to prove that the structure he entered was a building within the meaning of the burglary statute, we agree and reverse the judgment of conviction.

The indictment charged that on March 13, 1998, Redfern committed the offense of burglary by "enter[ing] a building, to-wit: W.C.T.V. Tower" with the intent to commit therein the felony of criminal damage to property in the second degree. The State presented evidence that on the night of March 13, 1998, at about 10:30 an engineer employed by WCTV, who lived near the WCTV television broadcast tower, noticed that there was a problem with the lights atop the 2,000-foot-high tower. The engineer drove to the tower located inside a fenced-in tower compound area, which itself was located inside a fenced-in 180-acre site surrounding the tower. The tower compound area was comprised of a building which serviced the tower and the tower structure itself which was located adjacent to the service building.

The engineer testified that he discovered someone had broken a door to gain entry into the service building and stolen a key from the building that unlocked a control box on the tower which secured the controls operating the tower elevator. He further testified that he found the elevator control box had been unlocked, the missing key was in the lock lying on top of the box, and the elevator was being

used by someone to go up the tower. Parachuting equipment he found near the building led the engineer to suspect that someone was attempting to parachute from the top of the tower. In fact, the engineer testified that they had caught people on previous occasions parachuting from the tower. Police arrived within a few minutes, and the engineer and a police officer brought the elevator back down and took it to the top of the tower to investigate. No one was found at the top of the tower, but they observed what appeared to be flashlights being carried by people on the ground moving away from the area of the tower. Officers investigating the lights discovered a car parked near the tower property covered by a parachute. A check of the car's tag revealed that it was a rental car rented by Redfern. A bag was found near the car containing a parachute and an owner identification card bearing Redfern's name.

The State presented additional evidence that over $500 of damage was done to the tower on the night of March 13. Part of the damage was to lights high on the tower, and the State presented evidence that a tower light alarm device showed that the light damage occurred at or near the time the break-in was discovered at the service building on the night of March 13.

Although Redfern initially told police he was not at the tower, he testified at trial and admitted he was there on the night of March 13 with two other people. He admitted they trespassed on the tower property, took the elevator to the top of the tower and parachuted from the top, then left their car, and hid when the police arrived. Redfern denied, however, that he or anyone with him broke into the service building, stole a key, or damaged the tower. According to Redfern, he was associated with a group of persons who had parachuted on numerous occasions off the WCTV tower and high buildings, antennae towers, bridge spans, and natural precipices as part of an activity called BASE (building, antennae, span, and earth) jumping. He testified that on a previous visit to the tower for BASE jumping, he had obtained a number off the bottom of the Master Lock on the elevator control box and used the number to obtain a duplicate key to the lock from a locksmith. Redfern said he used his duplicate key to gain access to the elevator control box on the night of March 13.

The State alleged in the indictment that Redfern committed the offense of burglary when, without authority, he entered "a building, to-wit: W.C.T.V. Tower" with the intent to commit therein the felony offense of criminal damage to property in the second degree. The offense of burglary is defined as follows:

A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of

> another or any building, vehicle, railroad car, watercraft, or
> other such structure designed for use as the dwelling of
> another or enters or remains within any other building, rail-
> road car, aircraft, or any room or any part thereof.

OCGA § 16-7-1 (a). Accordingly, in order to prove the offense of bur-
glary as charged in the indictment, the State was required to prove
that the WCTV tower unlawfully entered by Redfern was a building
within the meaning of the burglary statute and that Redfern
intended to or committed the felony offense of criminal damage to
property in the second degree in that building.

As to the element of unlawful entry, there was direct evidence
that Redfern entered the WCTV tower, and the State produced addi-
tional circumstantial evidence that Redfern entered the service
building adjacent to the tower to steal the key to the elevator control
panel. The only evidence which the State produced proving the ele-
ment of commission of the felony offense of criminal damage to prop-
erty in the second degree was circumstantial evidence that, after
entering the WCTV tower, Redfern caused over $500 of damage to
the tower.

Although the State does not clearly set forth its theory, it
appears that to prove the charge that Redfern unlawfully entered the
alleged building with the intent to commit the charged felony
therein, the State intended to show either: (1) that the WCTV tower,
standing alone, was a building for purposes of the burglary statute,
or (2) that, even if the tower standing alone would not be considered
a building, it was a building under the burglary statute because it
was part of the adjacent service building.

We find no evidence to support a claim that the 2,000-foot-high
broadcast tower should be considered a building because it was part
of the adjacent service building. Although photographs show there
was a walkway between the service building and the tower, they
were clearly two separate structures. The base of the tower was a
short distance from the service building, and the tower was indepen-
dently supported by guy wires running from the tower to the ground.
Moreover, testimony from the WCTV engineer indicated that he had
to exit the service building to walk to the elevator control panel
located on the tower. Compare *Floyd v. State*, 207 Ga. App. 275, 280
(427 SE2d 605) (1993) (where we concluded that a garden center con-
tiguous to a store was part of the store's main building).

Accordingly, the issue which controls this case is whether the
broadcast tower was a building within the meaning of the burglary
statute. "Georgia's [burglary] statute is very broad and does not limit
its application to buildings of any particular type or in any particular
condition." *Smith v. State*, 226 Ga. App. 9, 11 (485 SE2d 572) (1997)

(unfinished house was a building under the burglary statute). The statute has been interpreted as applying to buildings of "whatever kind." Id.; *Franks v. State*, 240 Ga. App. 685, 687 (524 SE2d 545) (1999) (enclosed metal trailer used to store goods was a building under the burglary statute). For example, in *Floyd*, 207 Ga. App. at 280, we noted that the Supreme Court in *Williams v. State*, 105 Ga. 814, 815 (32 SE 129) (1898) held that a chicken coop enclosed only by wire and covered by shingles was within the meaning of a criminal statute prohibiting theft not only from "any dwelling-house, store, shop, [or] warehouse" but also from "*any other building*." *Williams* defined the term building as "an edifice for any use; that which is built, as a dwelling-house, barn, etc." (Citation omitted.) Id. at 815. Similarly, in construing the burglary statute in *Smith*, 226 Ga. App. 9, we referred to another broad definition of a building as

> a structure in the nature of a house built where it is to stand; as commonly understood, a house for business, residence, or public use, or for shelter of animals or storage of goods, and very generally, but not always, the idea of a habitation for the permanent use of man, or an erection connected with his permanent use.

(Citation and punctuation omitted.) Id. at 10-11.

Nevertheless, the broad meaning given to the term building under the burglary statute does not encompass every type of structure. One element common to the various structures found to be buildings under the statute is that they provided an enclosure of some type for people, animals, or goods. We find this element to be lacking in the WCTV broadcast tower at issue. The purpose of the 2,000-foot-high tower was not to enclose anything but to provide a tall structure from which the television broadcast signal could emanate. The tower was a slender structure constructed of steel beams and held upright by guy wires running from the tower to the ground. It was open to the elements from all sides from top to bottom. To the extent a means was provided by stairs or elevator to ascend the tower, the only apparent purpose for this was tower maintenance. We conclude this is not the type of structure the legislature intended to protect as a building under the burglary statute. Accordingly, the illegal entry upon and alleged damage to the tower caused by Redfern were covered not by the burglary statute but by the criminal statutes related to criminal trespass and damage to property set forth in OCGA Title 16, Chapter 7, Article 2.[1]

---

[1] We note that Redfern was charged in a separate count of the indictment under OCGA § 16-7-23 with the felony offense of criminal damage to property in the second degree and was found not guilty.

*Judgment reversed. Ruffin and Ellington, JJ., concur.*

DECIDED OCTOBER 31, 2000.

*Culpepper & Horne, Robert Culpepper III, Melvin R. Horne*, for appellant.

*J. David Miller, District Attorney, Robert R. Auman, Assistant District Attorney*, for appellee.