A10A2072. DAVIS v. THE STATE.
(706 SE2d 710)

PHIPPS, Presiding Judge.

Michael Leonard Davis was convicted of burglary, aggravated assault, and misdemeanor obstruction of an officer. He contends that the evidence was insufficient and that a variance between the allegata and the probata was fatal. Davis also contends that the trial court erred by refusing to give his requested charge on impeachment, denying his motion for a mistrial, and denying his motion for a new trial based upon his claim of ineffective assistance of counsel. Because Davis has shown no reversible error, we affirm.

1. When an appellant challenges the sufficiency of the evidence,

"the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1]

The events underlying this case began at a house with street address "308 Alder Street." Ricky Hill was renting the house, where he and his family had lived until a fire damaged the upstairs level in July 2007. Because Hill continued to pay rent, store almost all of the family's belongings inside the house, and receive his mail there, he checked on the house each day.

When he drove to the property at about noon on September 19, 2007, it was immediately apparent to him that someone had opened an exterior door. Hill went into the house and found a man, who dove out a bedroom window and fled on foot. Hill exited the same window and chased the man. Hill noted that the man had anchored on his shoulders a red book bag that belonged to his (Hill's) child. The man also was carrying a plastic bag, which he soon abandoned while trying to escape Hill.

When Hill was very close to catching the man, the man stopped, turned around, and "took a swing" at Hill, which "swing" Hill demonstrated at trial. Hill further recounted that he took a few steps backward, then brought up his hands and "got ready for the fight." Hill testified, "[The man] looked at me like I was stupid and looked over towards his right hand. . . . He had a funny look on his face, so he looked over at his hand again; and I looked over to see what he kept looking at and he had a screwdriver in his hand." The screwdriver was seven to eight inches long. At that point, Hill retreated backward, and the man began to flee. Hill "stayed behind him . . . without getting too close" because he was concerned that the man had a screwdriver. Meanwhile, Hill used his cell phone to report the burglary to police, describing further the location of his ongoing foot pursuit of the perpetrator, as well as the perpetrator's gender, race, and clothing.

Within about 15 minutes of the start of the foot chase, a POST-certified investigator with the City of Tifton Police Department arrived in the area in response to a dispatch report. The investigator immediately noted a man who matched the description in the lookout report, including having in his possession a red bag. Hill pointed the investigator to the man as the perpetrator. In addition, onlookers in the area began pointing at the man, shouting that he was the one who had been chased. The investigator, who was

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979) (citation omitted).

not in full uniform, but was wearing a badge and his sidearm, stopped his car in the middle of the street, activated its strobe lights, identified himself to the man as "Police," and commanded the man to put the red bag down and to show his hands.

The man, Hill testified at trial, was "completely defiant," persistently denying that he had done anything wrong. Similarly, the investigator testified that the man turned his body toward him in an aggressive stance, became "very loud and aggressive" with him, and demanded that the officer tell him what he wanted with him. The investigator ordered the man to "get down"; the man did not. The investigator noted that the man kept his left hand near the red bag that was on his left side. Recalling information supplied in the lookout report that the suspect might be armed, the investigator drew his gun and again ordered the man to put his hands in the air. The man disregarded the order and continued to be loud and argumentative. Soon thereafter, approaching sirens could be heard; the man moved his hand away from the red bag; and the investigator returned his gun to its holster. The investigator seized the opportunity to grab the man and put him on the hood of his police car for handcuffing. The man continued to be verbally argumentative and repeatedly tried to snatch his arms free of the investigator's grasp. Finally, with the help of backup officers who arrived, the investigator was able to handcuff the man.

After the man was arrested, Hill traced the path taken back to the house. Along the way, he found various articles that belonged to him. At trial, Hill identified Davis as the man he had found in his house and pursued until the police caught and arrested him.

Davis elected not to testify and not to call any witnesses. However, his lawyer advised the court that the defense wanted to present to the jurors, for impeachment purposes, a video recording of Hill's statement to the police on the date of the incident.[2] Defense counsel did not seek to redact any portion of the video recording, and the prosecutor announced that the state had no objection to playing the entire video recording.[3] Immediately before the defense played the recording for the jurors, the trial court informed them, "[T]he parties have stipulated and agreed to exhibit to you an interview that was conducted on [the date of the incident] at the police department." The video recording showed Hill describing and demonstrat-

---

[2] See *Knight v. State*, 266 Ga. 47, 48 (2) (464 SE2d 201) (1995) (prior inconsistent statement of witness who takes the stand and is subject to cross-examination is admissible as substantive evidence).

[3] See generally id.; *Overton v. State*, 295 Ga. App. 223, 236-237 (5) (671 SE2d 507) (2008) (noting that prior statements may be admissible under the rule of completeness); *Phillips v. State*, 289 Ga. App. 281, 282 (2) (656 SE2d 905) (2008) (same).

ing his encounter with Davis, including Davis fleeing the house and then taking a swing at Hill with a screwdriver in his hand.[4]

(a) Burglary is committed

> when, without authority and with the intent to commit a felony or theft therein, [a person] enters or remains within the dwelling house of another or any building . . . or other such structure designed for use as the dwelling of another or enters or remains within any other building . . . or any room or any part thereof.[5]

The indictment alleged that Davis committed that offense by entering "the dwelling house of James Ricky Hill without authority, located at 308 Alder Street, Tifton, Tift County, with the intent to commit a theft therein."

(i) Davis argues that there was no proof that the structure at issue was a "dwelling house" because Hill was no longer living there.[6] This argument is controlled adversely to Davis by cases such as *Waldrop v. State*[7] and *Sanders v. State*.[8] As recognized therein, Georgia's burglary statute is very broad and "does not limit its application to buildings of any particular type or in any particular condition."[9] Here, the evidence showed the house at issue to be a building under the burglary statute.[10] And in the final charge to the jury, the trial court instructed that the burglary statute proscribed unauthorized entry into or remaining in "any building or dwelling place of another."

Davis argues that the house at issue here did not fall within the term "building" under the burglary statute, asserting that it was not

---

[4] Davis raises no Confrontation Clause challenge to Hill's out-of-court statement; indeed, "the Sixth Amendment's Confrontation Clause is not implicated where the proponent of the hearsay is the defendant." *Al-Amin v. State*, 278 Ga. 74, 89 (19), n. 12 (597 SE2d 332) (2004).

[5] OCGA § 16-7-1 (a).

[6] See *Sanders v. State*, 293 Ga. App. 534, 537 (2) (b) (667 SE2d 396) (2008) (noting that, for purposes of the burglary statute, "dwelling house" has been defined as a "residence or habitation of a person other than the defendant, where such person makes his abode") (punctuation and footnote omitted).

[7] 300 Ga. App. 281 (684 SE2d 417) (2009).

[8] Supra.

[9] *Waldrop*, supra at 283 (1) (citation and punctuation omitted); *Sanders*, supra at 537 (2) (b) (punctuation and footnote omitted); see *In the Interest of J. B. M.*, 294 Ga. App. 545, 546 (1) (669 SE2d 523) (2008) (having incorporated the all-inclusive word "building," the burglary statute has been interpreted as applying to "buildings of whatever kind") (citation and punctuation omitted).

[10] See *Sanders*, supra ("house under construction which is so far completed as to be capable of providing shelter to people, animals, or property constitutes a building under (the burglary) statute") (punctuation, footnote and emphasis omitted.).

sufficiently enclosed and secured. Citing *Redfern v. State*,[11] Davis points to evidence that Hill and his family had moved out due to fire damage, a window was broken out, and prior to the date of the incident, the house had been broken into on several occasions. Davis's reliance upon *Redfern* is misplaced because that case, which determined that a 2,000-foot-high broadcast tower did not fall within the broad meaning given to the term "building" under the burglary statute,[12] is factually inapposite. Here, the evidence showed that the damage caused by the fire was primarily on the upper floor. And while Hill and his family had moved out, Hill nevertheless had continued to pay rent, continued to store most of their belongings there, and checked each day that the house remained locked. There is no merit in Davis's argument.[13]

(ii) Davis also argues that there was no showing that he was not authorized to enter the structure, because the property owner (Hill's landlord) did not testify. Given that Hill was still paying rent to the property owner, still storing his belongings there, and still receiving mail there, his testimony that Davis was not authorized to be in the house was sufficient to show that Davis's entry was "without authority."[14]

(b) Aggravated assault is committed when a person "assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."[15] Simple assault is committed when a person, inter alia, "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury."[16] The indictment alleged that Davis "did make an assault upon the person of James Ricky Hill, with a screwdriver, which when used offensively against a person is likely to or actually does result in serious bodily injury."

Davis argues that the evidence showed that he was merely holding the screwdriver, rather than using it to attack or threaten Hill. He also argues that there was insufficient proof that Hill was placed in reasonable apprehension of receiving a violent injury, given Hill's continued pursuit of him despite knowing about the screwdriver.

---

[11] 246 Ga. App. 572 (540 SE2d 701) (2000).

[12] Id. at 574-575.

[13] See *Sanders*, supra; *In the Interest of J. B. M.*, supra.

[14] OCGA § 16-7-1; see *Glaze v. State*, 253 Ga. App. 349, 351 (559 SE2d 90) (2002) (testimony of renter is sufficient to prove lack of authority to enter a dwelling place).

[15] OCGA § 16-5-21 (a) (2).

[16] OCGA § 16-5-20 (a).

The jury was not required to view the evidence as Davis urges.[17] Here, the evidence showed that Davis had a seven- to eight-inch-long screwdriver in his hand; that he "took a swing" at Hill when Hill caught up to him; that Hill assumed a fighting stance until he noticed the screwdriver; that Hill then immediately retreated; and that Hill did not thereafter try to personally apprehend Davis, but opted to call the police and only trail Hill while keeping a safe distance. Viewed in the light most favorable to the prosecution, the evidence showed aggravated assault.[18] Davis's reliance upon *Nichols v. State*[19] is misplaced.

(c) Misdemeanor obstruction is committed when "a person . . . knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties."[20] The indictment alleged that Davis "did knowingly and willfully obstruct and hinder [the police investigator], a law enforcement officer in the lawful discharge of said officer's official duties by struggling with said officer and resisting arrest."

(i) Davis argues that there was insufficient proof that the investigator was in the lawful discharge of any official duty, asserting that the investigator had no reason to believe that he was committing any crime when he sought to subdue him. Davis cites *Wynn v. State*,[21] which stated:

[A]n officer is not within the lawful discharge of his official duties when he approaches and questions an individual without specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. Where circum-

---

[17] See *Mickens v. State*, 277 Ga. 627, 629 (593 SE2d 350) (2004) (the jury determines the credibility of the witnesses and resolves evidentiary conflicts or inconsistencies).

[18] See *Crane v. State*, 297 Ga. App. 880, 883-884 (2) (678 SE2d 542) (2009) (aggravated assault shown, based on evidence that defendant confronted victim while holding a claw hammer and that victim defended himself with a baseball bat based on his fear that defendant was going to strike him, despite defendant's argument that he had no intention of hitting victim with hammer and that the victim had attacked him); *Lawson v. State*, 275 Ga. App. 334, 338 (3) (620 SE2d 600) (2005) (aggravated assault shown, based on evidence that defendant entered store with a mask concealing his face, that he opened the cash drawer, that he attempted to wrangle a key from a clerk's hand after she locked the cash drawer, that he made repeated demands for money, that he banged his hands on the register, and that he appeared to have been holding a gun, causing the clerk to retreat to the office in fear that he would shoot her); *McSears v. State*, 226 Ga. App. 90, 92 (3) (485 SE2d 589) (1997) (aggravated assault shown, based on evidence that defendant intentionally swung knife to scare victim).

[19] 238 Ga. App. 412, 413-414 (2) (519 SE2d 20) (1999) (evidence insufficient to show aggravated assault, where the defendant never actually touched the knife or threatened the officer with it; at most, the evidence showed that defendant unsuccessfully reached for the knife and briefly struggled with officer over it).

[20] OCGA § 16-10-24 (a).

[21] 236 Ga. App. 98 (511 SE2d 201) (1999).

stances do not provide an officer with articulable suspicion (less than probable cause, but greater than mere caprice) that the law has been or is about to be violated, the officer's act of detaining and questioning an individual is nothing more than a police-citizen encounter outside the scope of the officer's "official" police duties.[22]

The investigator's encounter with Davis stemmed from a lookout bulletin. "A stop pursuant to a lookout requires only specific and articulable facts which, together with rational inferences drawn therefrom, reasonably warrant the intrusion."[23] Here, the investigator had ample specific and articulable facts to justify the stop. Minutes after having heard the lookout bulletin, the investigator arrived at the scene to discover a man there matching the description provided in the lookout bulletin, including having a red bag in his possession. Hill pointed to the man as the perpetrator, and gathered onlookers were shouting as they pointed the investigator to Davis. These circumstances were sufficient to give rise to a reasonable suspicion of criminal conduct,[24] and there is no merit in Davis's claim that the investigator nevertheless "should have spoken with the witnesses first to *guarantee* that [he] was the suspect in question."[25]

(ii) Davis asserts that his conduct did not rise to the level of obstruction. Given the account above of Davis's conduct in response to the officer's commands and efforts, there is no merit to this assertion. Davis has misplaced his reliance upon inapposite cases.[26]

2. Davis contends that there was a fatal variance between the allegata and probata. Specifically, Davis points out that the indictment alleged that he burglarized a "dwelling place," whereas the evidence showed that Hill was no longer living there. Additionally, Davis points out (as we have noted above) that the court defined burglary in its final charge as committed "when a person enters or remains in any building or dwelling place of another."

Pretermitting whether Davis waived this issue,[27] Davis has shown no fatal variance.

We no longer adhere to an overly technical application of the

---

[22] Id. at 99 (2) (citations, punctuation and emphasis omitted).

[23] *In the Interest of B. K. M.*, 247 Ga. App. 588, 590 (544 SE2d 504) (2001) (citation omitted); see *Bright v. State*, 265 Ga. 265, 279 (5) (a) (455 SE2d 37) (1995).

[24] See *Overand v. State*, 240 Ga. App. 682, 683 (1) (523 SE2d 610) (1999); see also *Burgess v. State*, 290 Ga. App. 24, 27 (658 SE2d 809) (2008).

[25] (Emphasis supplied.)

[26] See. e.g., *Coley v. State*, 178 Ga. App. 668, 669 (344 SE2d 490) (1986) (defendant's mere failure to immediately follow police orders was insufficient to show obstruction).

[27] See *Webb v. State*, 277 Ga. App. 355, 359 (2) (626 SE2d 545) (2006).

fatal variance rule, focusing instead on materiality. The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused. It is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense. Only if the allegations fail to meet these tests is the variance fatal.[28]

Here, the burglary count of the indictment correctly specified the location of the building unlawfully entered and also accurately identified the date of the crime.

[These] allegations definitely informed [Davis] as to the charge( ) against him so as to enable him to present his defense and not to be taken by surprise. The allegations were further adequate to protect [Davis] against another prosecution for the same offense. The indictment's description of the structure as a dwelling house as opposed to a building did not mislead [Davis] in such a manner that impeded his ability to present a subsequent defense or surprise him at trial, and he cannot be subjected to a subsequent prosecution for the burglary of the building in question. Thus, [Davis] has failed to show that any variance was fatal.[29]

3. Davis contends that the trial court erred by refusing to declare a mistrial after the state made an improper closing argument. Davis points to the prosecutor's remark that: "Mr. Davis is incredibly lucky to be drawing breath today because there are a lot of officers given the numbers of officers who are killed each and every year by folks doing just what Mr. Davis does —."

This sentence was cut off by an objection, asserting that the remark was injecting improper, prejudicial commentary. The prosecutor countered that the statement was a reasonable inference from

---

[28] *Weeks v. State*, 274 Ga. App. 122, 125 (1) (616 SE2d 852) (2005) (citation, punctuation and footnote omitted).

[29] *Sanders*, supra at 538 (2) (c) (footnote omitted); see *Weeks*, supra at 125-126; *Edward v. State*, 261 Ga. App. 57, 59 (2) (581 SE2d 691) (2003) (variance was not fatal where the indictment charged the correct address of the burglary, but may have misidentified the house's owner).

the investigator's testimony that he had considered that Davis might have had a weapon, then adding, "it is more than proper for me to say there are police officers that are killed every year under similar circumstances." The trial court overruled the objection, finding the complained-of remark was "sort of public knowledge." However, the court cautioned the prosecutor to tender argument that was supported by the evidence. Thereupon, the prosecutor resumed the argument as to that issue, but only by repeating that Davis was lucky to be alive and adding that Hill was also lucky to be alive in light of evidence of Davis's aggravated assault upon him. From there, the prosecutor turned to a wholly different topic.

Davis argues that the prosecutor exceeded the wide latitude afforded counsel during closing argument because there was no evidence that he was attempting to kill any of the officers involved in this case and therefore the remark referencing unknown instances where officers had been killed in the line of duty was improper. However, the prosecutor's remarks did not go so far as to insinuate that *Davis* had attempted to kill any of the officers that day. And, the remarks did relate, in part, to Davis's obviously precarious situation given the investigator's response to his encounter with Davis, namely, drawing his gun. Moreover, after being cautioned by the trial court that the wide latitude afforded counsel during closing argument was not boundless, the prosecutor did not revisit the point concerning police officers, but turned to the more narrow encounter between Davis and Hill involving the screwdriver, which gave rise to the aggravated assault count.

"When prejudicial matter is improperly presented to the jury, a mistrial is appropriate if it is essential to preserve the defendant's right to a fair trial."[30] A trial court's decision not to grant a mistrial based on a prosecutor's improper remarks will not be disturbed on appeal absent a manifest abuse of discretion.[31] Here, consideration of the entire record satisfies us that the prosecutor's remarks did not deprive Davis of a fair trial.[32] Denial of his motion for a mistrial was

---

[30] *Brown v. State*, 278 Ga. 544, 548 (7) (604 SE2d 503) (2004) (citation omitted).

[31] *Byrum v. State*, 282 Ga. 608, 613 (10) (652 SE2d 557) (2007).

[32] See *Williams v. State*, 172 Ga. App. 682 (324 SE2d 544) (1984) (although prosecutor's closing argument remarks — mentioning instances wherein law enforcement officials had been killed while attempting to effect arrest and adding that "(b)ut for the grace of God," appellant would have been on trial for just such an offense — were irrelevant and improper, trial court's refusal to declare a mistrial was not reversible error); see generally *Stafford v. State*, 271 Ga. 620, 622-623 (7) (523 SE2d 307) (1999) (even assuming that matter presented to jury improperly placed defendant's character in issue, trial court did not abuse its discretion in denying motion for mistrial, where it was not apparent that a mistrial was necessary to preserve defendant's right to a fair trial).

no abuse of discretion.[33]

4. Davis contends that the trial court erred by refusing to give his requested charge on impeachment in its entirety.

"[A]n instruction on impeachment must be read in conjunction with the entire jury instruction and provides no cause for reversal if the court's instruction in its entirety makes it plain that the jury is the sole judge of witness credibility."[34] In the instant case, the court's final charge plainly explained that matters of witness credibility were exclusively within the jury's province.[35] Because the final charge, taken as a whole, fully and adequately informed the jurors of the correct legal principles concerning credibility and impeachment, we find no basis for reversal.[36]

5. Davis contends that the trial court erred by rejecting his claim of ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel,

> a defendant must establish, pursuant to *Strickland v. Washington*,[37] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. . . . In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo.[38]

We need not address both components of the *Strickland* test if the showing on one is insufficient, nor must we address the components in any particular order.[39]

Specifically, Davis argues that his trial counsel erred by failing to request charges on simple battery and simple assault as lesser included offenses of the charged crime of aggravated assault.

(a) Simple battery is committed when a person "either: (1) [i]ntentionally makes physical contact of an insulting or provoking nature with the person of another, or (2) [i]ntentionally causes

---

[33] See *Byrum*, supra; *Stafford*, supra; *Williams*, supra.

[34] *Berry v. State*, 267 Ga. 476, 480 (4) (c) (480 SE2d 32) (1997); see *Morris v. State*, 239 Ga. App. 100, 104 (6) (520 SE2d 485) (1999).

[35] See *Berry*, supra; *Morris*, supra.

[36] See *Sharpe v. State*, 272 Ga. 684, 688-689 (6) (531 SE2d 84) (2000) (final charge, as a whole, must be considered in assessing whether alleged error therein is reversible); see also *Berry*, supra; *Morris*, supra.

[37] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[38] *Espinosa v. State*, 285 Ga. App. 69, 72 (2) (645 SE2d 529) (2007) (footnotes omitted).

[39] *Turner v. State*, 253 Ga. App. 760, 763 (6) (560 SE2d 539) (2002).

physical harm to another."[40] As Davis concedes, there was no evidence that Davis made physical contact with Hill or caused physical harm to him. Where, as here, "the state's evidence establishes all of the elements of an offense and there is no evidence raising the lesser offense, there is no error in failing to give a charge on the lesser offense."[41] Davis has failed to demonstrate that his trial counsel erred.

(b) Simple assault is committed when a person "either: (1) [a]ttempts to commit a violent injury to the person of another; or (2) [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury."[42] As set forth above, the indictment alleged the latter manner only and stated that the assault was aggravated because it was committed with a screwdriver.[43] Davis argues that the evidence allowed for a finding that the screwdriver was not "used offensively against [Hill]"[44] as contemplated by the aggravated assault statute. Therefore, Davis claims, the jury should have been instructed on simple assault as a lesser included offense. "Where a case contains some evidence, no matter how slight, that shows that the defendant committed a lesser offense, then the court should charge the jury on that offense."[45]

But there was no evidence in this case showing that Davis committed merely simple assault. Instead, the evidence was uncontroverted that, when Davis "took a swing" at Hill, Davis was holding the screwdriver in the same hand. Hill demonstrated during direct examination Davis's actions in taking the "swing." And when Davis's lawyer revisited that demonstration, she asked, "Now you got off the stand and you showed the jury how it was Mr. Davis came at you with a screwdriver?" Hill responded, "Yes." While the lawyer's question did not constitute evidence, Hill's response thereto did. Moreover, the evidence showed, after Davis "took a swing" at Hill with the screwdriver (as the latter demonstrated at trial, then testified that his demonstration showed how the former "came at [him] with the screwdriver") and Hill realized what had happened, Hill immediately retreated out of his fighting stance and aborted his plan to personally apprehend Davis. In addition, the video recording presented by Davis showed Hill describing and demonstrating that Davis took a swing at him with a screwdriver in the same hand.

---

[40] OCGA § 16-5-23 (a).

[41] *Edwards v. State*, 264 Ga. 131, 133 (442 SE2d 444) (1994) (citation and emphasis omitted).

[42] OCGA § 16-5-20 (a).

[43] See Division 1 (b), supra.

[44] OCGA § 16-5-21 (a) (2).

[45] *Edwards*, supra.

The evidence thus showed that Davis's assault upon Hill was "with a . . . [screwdriver]" within the purview of the aggravated assault statute. And where, as here, the "evidence establishes all of the elements of an offense and there is no evidence raising the lesser offense, there is no error in failing to give a charge on the lesser offense."[46] It follows, then, that Davis's trial counsel's performance was not deficient by not requesting such a charge.[47]

*Judgment affirmed. Miller, P. J., and McFadden, J., concur.*

DECIDED FEBRUARY 17, 2011.

*John G. Edwards*, for appellant.
*C. Paul Bowden, District Attorney, Kevin E. Hutto, Assistant District Attorney*, for appellee.

---

[46] Id. (citation and emphasis omitted).
[47] See *Strickland*, supra.